### MODERN MUZZLELOADING, INC., Plaintiff,

v.

### John MAGAW, Director, Bureau of Alcohol, Tobacco and Firearms, Defendant.

### No. CIV. A. 97–2956(TAF).

United States District Court, District of Columbia.

Aug. 7, 1998.

---

Richard E. Gardiner, Fairfax, VA, for Plaintiff.

Wilma A. Lewis, United States Attorney, Kimberly N. Brown, Assistant United States Attorney, Washington, DC, Patricia W. Milgram, David C. Lieberman, Office of Chief Counsel, Bureau of Alcohol, Tobacco and Firearms, for Defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter came before the Court at a hearing on July 24, 1998. In February, the Court considered the parties' cross-motions for summary judgment. The Court denied the motions, remanding to the ATF for further explanation of its classification of the Knight Disc Rifle. Pending before the Court are the parties' renewed cross-motions for summary judgment. After considering the parties' written submissions, their arguments at the hearing, and the applicable law, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion.

## I. Background

This case involves a challenge to the Bureau of Alcohol, Tobacco and Firearm's ("ATF") decision to classify the Knight Disc Rifle as a firearm for purposes of the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. §§ 921–930. The statute excludes "antique firearms" from the class subject to regulation. Modern Muzzleloading, Inc., the manufacturer of the Knight Disc Rifle, contends that the rifle is an antique firearm that should not be subject to regulation under the GCA. Acting on that view, for the fifteen-month period ending in December 1997, Modern Muzzleloading manufactured and distributed 30,000 Knight Disc Rifles without

a license.[1]  In this action, Modern Muzzleloading has sued the Director of the ATF, seeking both (1) a declaration that the Knight Disc Rifle is not a firearm for purposes of the GCA and (2) an order enjoining ATF from enforcing its classification of the rifle.  Modern Muzzleloading previously sought a preliminary injunction, which the Court denied in its February order.

*The GCA*

The GCA defines the term "firearm" as "any weapon . . . which will or is designed to . . . expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3).  However, "[s]uch term does not include an antique firearm."  *Id.* The GCA defines the term "antique firearm" as follows:

> (A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

> (B) any replica of any firearm described in subparagraph (A) if such replica—

>> (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

>> (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

18 U.S.C. § 921(a)(16).  This case turns on whether the Knight Disc Rifle is a replica within the meaning of subparagraph (B).  Since it is a currently-manufactured weapon, the rifle cannot qualify directly under subparagraph (A).  It is also undisputed that the rifle does not accept either rimfire or conventional centerfire ammunition and that, therefore, subparagraphs (B)(i) and (B)(ii) do not apply.  Both parties agree that the term replica should or may be understood by referring to the parenthetical language found in subparagraph (A).  Nevertheless, the parties disagree about the scope of this parenthetical and its affect on the determination of what constitutes a replica under subparagraph (B).

*The Knight Disc Rifle*

As this Court discussed in its February decision, the key characteristic of the Knight Disc Rifle is its use of either a percussion cap[2] or a shotgun primer[3] as an ignition system.  The rifle is designed so that each of those systems is held in place by a plastic disc with a hole in its center, into which the user inserts the ignition system.  Modern Muzzleloading sells two discs for use in the rifle.  One, a red disc that actually comes with the rifle, is designed to accept a percussion cap.  The other, an orange disc that Modern Muzzleloading sells as an accessory, is designed to accept a shotgun primer.  The only difference in the discs is that the hole in the center of the orange disc is slightly larger, because the shotgun primer used in the rifle is slightly larger than a percussion cap.  The use of the primer is viewed by the ATF as a defining characteristic in determining whether the Knight Disc Rifle is properly classified as an "antique."

*ATF's Classification of the Knight Disc Rifle*

In October 1997, ATF wrote Modern Muzzleloading, stating that it had received inquiries regarding the status of the Knight Disc Rifle and requesting samples of the rifle and its accessories.  After receiving those items from Modern Muzzleloading, ATF examined the rifle.  The ATF official who inspected the rifle concluded that "[the Knight Disc Rifle] is designed to use shotgun primers for an ignition system.  It is not an antique firearm as defined in 18 U.S.C. § 921(a)(16) and it is a firearm as defined in 18 U.S.C. § 921(a)(3)."  ATF Inspection Report, Admin. Record at 16.

The conclusion reached in the report was consistent with the position expressed by the ATF in an industry circular released three weeks before the inspection of the Knight

---

**1.** Subsequent to the initiation of this lawsuit, the plaintiff did apply for a license, which ATF granted.

**2.** A percussion cap is a hollow metallic cup containing an explosive material.

**3.** A primer contains a pressure sensitive compound that explodes when the primer is struck by the firing pin or striker.  Primers are made in various shapes and sizes.

Disc Rifle. That circular found that "[m]uzzle loading weapons with 'in line' firing mechanisms designed or redesigned to use modern conventional firearm primers do not meet the definition of antique firearms and are subject to regulation as a firearm.[4] Primers are not an antique ignition system and are ammunition for firearms subject to regulation." ATF Industry Circular, November 6, 1997, Admin. Record at 14.

Subsequent to its release of the industry circular and inspection of the Knight Disc Rifle, ATF informed Modern Muzzleloading of its classification decision in a letter dated December 8, 1997. Explaining its view that the Knight Disc Rifle is a firearm, ATF noted that its examination revealed that "the rifle is designed to use # 209 shotgun primers regardless of the type of disc actually used in the rifle."[5] ATF wrote the following:

> Such shotgun primers are distinctly different from percussion caps. As defined in [the GCA], the term ammunition means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm. Number 209 shotgun primers are designed for use in "firearms" and the primers are ammunition subject to the provisions of 18 U.S.C. chapter 44. Percussion caps are not ammunition as defined.
>
> Based on our examination, the rifle is designed to use shotgun primers or percussion caps interchangeably and is not a replica of an antique firearm. Accordingly, the rifle is a firearm as defined in [the GCA].

Classification Decision Letter dated December 8, 1997.

The Court's February 18, 1998 decision found that the ATF was essentially relying entirely on the fact that the GCA defines primers of the type used in the Knight Disc Rifle as ammunition subject to regulation. *Modern Muzzleloading v. Magaw, Inc.*, No. 97–2956, slip op. at 8 (D.D.C. Feb. 18, 1998).

The Court stated that this was the only reason that the ATF asserted to support its position that primers are "distinctly different from percussion caps." *Id.* (quoting Classification Decision Letter dated December 8, 1997). Accordingly, the Court remanded to the ATF in order to allow the agency to prepare a more thorough explanation of its classification of the Knight Disc Rifle. *Id.* at 10. The Court also found the GCA ambiguous with regard to whether shotgun primers, as used in the rifle, are an antique ignition system. *Id.*

Following remand in this case, the ATF further examined the classification of the Knight Disc Rifle. By letter dated May 15, 1998, the ATF advised plaintiff that it was reaffirming its classification of the Knight Disc Rifle as a firearm. The ATF explained that the Knight Disc Rifle is not an antique firearm because it is designed to use a modern centerfire shotgun primer as an ignition system. The ATF also explained why modern centerfire shotgun primers are not similar to the matchlock, flintlock, and percussion cap ignition systems specified in the definition of an antique firearm found in 18 U.S.C. § 921(a)(16)(A).

*The Pending Motions*

On May 15, 1998 the ATF also filed a renewed motion for summary judgment in the present action. ATF contends that it has addressed the Court's earlier concerns and is now entitled to summary judgment. ATF argues that its classification of the Knight Disc Rifle is consistent with the language and purpose of the GCA. ATF argues that the Administrative Procedure Act's ("APA") deferential standard of review and the teachings of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) apply to this case and accordingly the ATF's decision should be upheld because it is not arbitrary or capricious. The plaintiff opposes this motion, arguing that the ATF has not provided this court with any information to support its

---

**4.** The Knight Disc Rifle has an in-line firing system.

**5.** Modern Muzzleloading disputes the accuracy of this conclusion. Nonetheless, ATF's classifica- tion of the rifle is independent of whether the red disc can accept a primer, since it is undisputed that the rifle is designed for use with a shotgun primer (using the orange disc).

position. Plaintiff contends that the record clearly demonstrates that a primer of the type used in the Knight Disc Rifle is an antique ignition system. Plaintiff also disputes the applicable standard of review, claiming that because a criminal statute is at issue, the deferential approach of *Chevron* is inapposite and the Court should instead apply the rule of lenity. It further argues that even if the Court applied an arbitrary and capricious standard to defendant's conduct, the ATF decision should not be sustained. The plaintiff contends that the defendant's standard for analyzing the Knight Disc Rifle as a possible antique is inconsistent with the GCA because a primer is a "similar type of ignition system" and hence a replica properly classified as an antique.

## II. Discussion

### A. The Applicable Standard of Review

■ After reviewing the parties contentions, the Court concludes that the plaintiff's position regarding the applicable standard of review lacks merit. Plaintiff asserts that because the statute is criminal in nature, the rule of lenity applies, and the defendant's decision is not sustainable. In the Court's view, this is incorrect. Although the statute is criminal in nature, the rule of lenity does not apply and the ATF's decision is entitled to deference by the Court.

As defendant's counsel ably pointed out,

> The rule of lenity is premised on the idea that 'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 115 S.Ct. 2407, 2416 n. 18, 132 L.Ed.2d 597 (1995)(quoting *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)). As the Supreme Court recently noted in interpreting the GCA, however, 'this Court has never held that the rule of lenity automatically permits [the person invoking the rule] to win.' *Muscarello v. United States*, —— U.S. ——, 118 S.Ct. 1911, 1919, 141 L.Ed.2d 111 (1998).

Defendant's Reply to Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment (Jun. 12, 1998) ("Def.Rep."), at 3–4. The fact that the statute is criminal in nature is simply not enough to invoke the rule of lenity. Rather, a Court must also find that there is a "grievous ambiguity or uncertainty in the statute." *Staples v. United States*, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)(quoting *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)). See also *Caron v. United States*, —— U.S. ——, 118 S.Ct. 2007, 2012, 141 L.Ed.2d 303 (1998)("rule of lenity is not invoked by a grammatical possibility"). "That maxim of construction is reserved for cases where, after seizing everything from which aid can be derived, the Court is left with an ambiguous statute." *Staples*, 511 U.S. at 619 n. 17, 114 S.Ct. 1793 (citing *Smith v. United States*, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (quoting *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), in turn quoting *United States v. Fisher*, 2 Cranch 358, 386, 2 L.Ed. 304 (1805)))(internal quotations and alterations omitted)(additional citations omitted).

■ Defendant readily admits that the statute at issue is criminal in nature. Yet, plaintiff has failed to convince this Court that the statute contains a "grievous ambiguity." In light of the structure and language of the statute, this Court finds that although the statute may be ambiguous to some degree, this ambiguity is slight, not grievous, and deference to the agency's interpretation of the statute is still warranted. Contrary to plaintiff's assertions, judicial deference to an agency's interpretation of a statute is not foreclosed simply because the statute contains criminal penalties. See *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 703, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)(finding that the "latitude" given to an agency in enforcing the statute, "together with the degree of regulatory expertise necessary to its enforcement, establishes that [the Court] ... owes some degree of deference to the Secretary's reasonable interpretation" of a statute, even when the statute contains criminal penalties)(citing Breyer, Judicial Review of Ques-

tions of Law and Policy, 38 Admin. L.Rev. 363, 373 (1986)). The statute at issue contains a section defining an antique firearm. *See* 18 U.S.C. § 921(a)(16). The section is not devoid of guidance in terms of Congressional intent. The statute is somewhat ambiguous because it defines an antique firearm as including weapons with certain types of ignition systems as well as those using similar types of ignition systems. Nevertheless, the statute, when read as a whole, provides guidance as to an antique firearm's key criteria. Under these circumstances, it is inappropriate to apply the rule of lenity.

Plaintiff argues that *Sweet Home* is inapplicable because, unlike the agency in *Sweet Home,* the ATF has not issued regulations setting forth its interpretation of the statute. However, it is not appropriate to so restrict *Sweet Home.* Rather, the Court is convinced that an agency's interpretation of a statute should not be ignored simply because it results from an adjudicatory rather than rulemaking process. Instead, an agency's interpretation of a statute is entitled to deference, even in the informal adjudicatory setting. *See Mountain Side Mobile Estates Partnership v. Secretary of HUD,* 56 F.3d 1243, 1247 (10th Cir.1995)(standard the same regardless of whether the agency interpretation is performed through rulemaking or informal adjudication) (citations omitted); *Arco Oil & Gas Co. v. EPA,* 14 F.3d 1431, 1433 (10th Cir.1993)(discussing Chevron deference and finding that the standard of review is the same whether the agency interpretation is performed through rulemaking or, as in *Arco,* by informal adjudication) (citations omitted); *Midtec Paper Corp. v. United States,* 857 F.2d 1487, 1496 (D.C.Cir.1988). In *Midtec,* the D.C. Circuit rejected the argument than an adjudicatory interpretation of a statute by the agency entrusted with its administration is entitled to any lesser degree of deference. *Id.* at 1496 ("With respect to the standard of review applicable to an agency's interpretation of the statutes it

administers, the distinction that Midtec draws between adjudication and rulemaking is without significance"). Hence, the Court rejects plaintiff's objections to *Sweet Home*'s relevance.

As for plaintiff's concerns about fair notice, this Court finds it noteworthy that in 1994, the ATF classified the plaintiff's "Magnum Elite" rifle as a firearm. Similar to the ATF's position in this dispute, the ATF's March 24, 1994 letter to Modern Muzzleloading, Inc. noted that the Magnum Elite did not use an antique ignition system, but instead used a centerfire rifle primer to provide ignition. *See* ATF March 24, 1994 Letter, Admin. R. at 1–3. Therefore, the ATF found that the Magnum Elite was properly classified as a firearm, rather than an antique. *See id.* This episode along with the obvious and pervasive federal regulation of firearms should have put plaintiff on notice about the possibility that the Knight Disc Rifle would not be classified as an antique.[6]

The plaintiff also cites *Crandon v. United States,* 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990), arguing that it strongly supports plaintiff's view that the rule of lenity applies to this suit and plaintiff should win. In *Crandon,* the Supreme Court was faced with the question of whether severance payments by a private corporation to former employees entering government service violated a provision of the Criminal Code that prohibits private parties from paying, and Government employees from receiving, substantial compensation for the employee's Government service. *Id.* at 154, 110 S.Ct. 997. The corporation made these lump sum payments to "mitigate the substantial financial loss each employee expected to suffer by reason of his change in employment." *Id.* The Court faced an issue of statutory interpretation in deciding whether 18 U.S.C. § 209(a) required a recipient of funds to be employed by the government at the time of payment. *See id.* at 158, 110 S.Ct. 997. The Court of Appeals had found that Congres-

---

**6.** The Court notes that the notice issue is also less compelling because this case is civil rather than criminal in nature. This helps alleviate some of the concerns surrounding fair notice. *See* Sanford N. Greenberg, *Who Says It's A Crime?: Chevron Deference To Agency Interpretations Of*

*Regulatory Statutes That Create Criminal Liability,* 58 U. Pitt. L.Rev. 1, 25–26 (1996) (potential conflicts between the rule of lenity and Chevron deference can often be resolved by demanding that an agency resolve any statutory ambiguity prior to seeking *criminal enforcement* ).

sional changes in 1962 concerning the wording of the applicable statute as well as public policy considerations counseled in favor of a broad interpretation. *Id.* at 160, 110 S.Ct. 997. The Supreme Court disagreed, finding that the wording of the applicable statute, although awkward, indicated that employment status was an element of the offense. *Id.* at 158–60, 110 S.Ct. 997. It is in this context that the Court found the rule of lenity an *additional* source of support for its conclusion that the statute required employment by the government at the time of payment. *See id.* at 158, 168, 110 S.Ct. 997.

This Court does not consider *Crandon* to have the far reaching effect that plaintiff asserts, namely resolving all issues in this case in favor of the plaintiff. Rather, after looking at the specific factual circumstances of *Crandon*, this Court is convinced that *Crandon*'s significance is more narrow. In *Crandon*, the majority only used the rule of lenity to resolve any temporal issues about the statute that *remained* after the Court had exhaustively analyzed the language and history of the statute. *See id.* at 168, 110 S.Ct. 997. Moreover, in that case, the Court found that the language and history of the statute weighed in favor of a narrow reading of the statute, thus complementing any application of the rule of lenity. *See id.* at 158–68, 110 S.Ct. 997. In contrast, in the present case, applying the rule of lenity would conflict with the intent expressed in the language of the GCA. As this Court has previously explained, the applicable section of the GCA is somewhat ambiguous, but the Court need not apply the rule of lenity, since the ambiguity is not grievous and the overall structure of the statute counsels against plaintiff's interpretation. To apply the rule of lenity in the manner suggested by plaintiff would be contrary to the Congressional intent expressed in the statute. This rationale also illustrates the difference between this case and *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–18, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (citing *Crandon* and applying the rule of lenity to a criminal statute at issue in a civil suit because the statute remained ambiguous even after applying traditional tools of statutory interpretation).

As for the concurrence in *Crandon,* which plaintiff repeatedly cites, this Court also finds plaintiff's reliance misplaced. The opinion found that the vast body of administrative interpretation on the employment status issue was not entitled to *Chevron* deference. *See id.* at 176–83, 110 S.Ct. 997. However, unlike the present case, the administrative interpretations at issue in that case were not created by an agency charged with carrying out a legislative scheme, like the ATF with regard to the GCA. *See id.* Instead the body of administrative interpretation to which Justice Scalia referred were by the Attorney General, the Office of Legal Counsel, and the Office of Government Ethics, among others. *See id.* These interpretations more closely resemble those of an in-house counsel in a corporation, rather than those espoused by an agency administering a regulatory scheme, such as the ATF.

■ Instead of applying the rule of lenity, the Court believes that the appropriate standard of review is found in the Administrative Procedure Act, which provides that "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[7] Under this deferential standard of review, the Court is not to substitute its judgment for that of the ATF. A court need only examine whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *See also Troy Corp. v. Browner,* 120 F.3d 277, 283 (D.C.Cir. 1997).

Moreover, since the ATF's classification of the Knight Disc Rifle "amounts to or involves

---

**7.** As defendant notes, plaintiff itself brought this action under the Administrative Procedure Act and has previously alleged that *Chevron* applies. *See* Complaint ¶ 1; Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Reply to Opposition to Motion for Preliminary Injunction at 2.

its interpretation" of the GCA, a statute administered by the ATF, we review that interpretation under the deferential standard announced in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Troy Corp.*, 120 F.3d at 283. In *Chevron*, the Supreme Court instructed reviewing courts to determine first whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. In other words this Court can only overturn ATF's decision if it "either ran athwart a clear mandate of Congress, or was an unreasonable one." *Troy*, 120 F.3d at 284.

B. ATF's Classification of the Knight Disc Rifle

■ Applying the *Chevron* standards in this case, the Court concludes that it must uphold the ATF's interpretation of the GCA and its decision to classify the Knight Disc Rifle as a firearm for purposes of the GCA. As the Court's previous discussion regarding the rule of lenity reveals, the GCA does not speak directly to the question of how to classify the Knight Disc Rifle. Recall the GCA's definition of an "antique firearm":

(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

(B) any replica of any firearm described in subparagraph (A) if such replica—

(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

(ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available

in the ordinary channels of commercial trade.

18 U.S.C. § 921(a)(16). The Court concludes that the GCA is somewhat ambiguous. *See supra*, discussion of GCA's slight ambiguity, at p. 8. Turning to the second step of the *Chevron* analysis, the Court must determine whether the agency's action is based on an impermissible interpretation of the statute or violates the APA's arbitrary and capricious test. As an initial matter, the Court agrees with both parties that the parenthetical in subparagraph (A) suggests that Congress intended a currently-manufactured weapon, which uses an ignition system "similar" to a matchlock, flintlock, or percussion cap, to fall within the antique classification, even if the weapon is not a reproduction of a pre–1899 firearm.

Thus, according to the parties and in the opinion of the Court, the critical inquiry is whether the Knight Disc Rifle's use of a primer ignition system prevents its classification as an antique firearm.

The administrative record is replete with defendant ATF's arguments concerning the significance of using a primer ignition system in a weapon. According to defendant, there is a great difference between the ignition systems mentioned in subsection (A) of Section 921(a)(16) and the primer ignition system used in the Knight Disc Rifle. Defendant argues that the design of primer ignition systems differs from percussion cap systems because these primers fit into a hole or pocket in the base of a cartridge case, rather than over a nipple or cone affixed to the breech of the firearm, as is the case with the percussion cap. Remand Letter at 6 (May 15, 1998). Arguing that the primer performs differently than the percussion cap, defendant asserts that primers provide hotter and better ignition and contain more explosive material than percussion caps. *Id.* (citing United States Patent No. 5,644,861, at 1). Defendant claims that primers were conspicuously absent from the parenthetical in Section 921(a)(16) and that Congress' inclusion of primers in the definition of ammunition, *see* 18 U.S.C. § 921(a)(17)(a), indicates they are not an element of an antique weapon. Moreover, according to defendant, the

relevant inquiry is not whether primers were used in pre–1899 firearms, but rather, whether the primer ignition system resembles early matchlock, flintlock, or percussion cap ignition systems. As further support for its position, defendant asserts that the Knight Disc Rifle's Number 209 primer is a very modern version of a primer ignition system and is the same style of primer found in modern shotgun ammunition. Remand Letter at 5 (May 15, 1998).

In contrast, plaintiff argues that firearms using primer ignition systems existed prior to 1899 and that therefore the Knight Disc Rifle's ignition system is similar to the ignition systems detailed in subsection (A) of Section 921. Plaintiff apparently contends that differences between the primer ignition system used in the Knight Disc Rifle and the other ignition systems referenced are irrelevant because such differences also existed in or before 1898. Plaintiff also disputes the ATF's asserted standard for determining whether a weapon is a replica [8] and contends that the ATF's references to the inclusion of primers in Section 921(a)(17)(A), which defines the term ammunition as used in the GCA, are irrelevant. Furthermore, according to plaintiff, differences in design, physical characteristics, and performance are not the type of functional ignition system differences relevant to this matter or requested by the Court in its February opinion.

This Court thinks that defendant's position is more convincing. Contrary to plaintiff's contention, the Court does not think that the standard announced by the ATF is inconsistent with the statute. Rather it seems like an entirely reasonable method of determining whether a weapon uses an ignition system similar to the matchlock, flintlock, or percussion cap ignition systems and hence whether a weapon should be classified as an antique. ATF has explained that the "standard does not preclude classification of a firearm as an antique simply because it uses interchangeable ignition systems—... consistent with the statute, the standard only

allows for the use of such early ignition systems in firearms classified as antiques." Def. Reply (Jun. 12, 1998). The Court also finds the defendant's arguments concerning the differences between the matchlock, flintlock, and percussion cap ignition systems and the primer ignition system used in the Knight Disc Rifle more compelling. There are differences between the two, set forth in the Administrative Record, and the Court does not think these differences can be pigeonholed as functional rather than design, physical characteristics, and performance. Instead the consideration of all these factors together compels the conclusion that the Knight Disc Rifle does not use an ignition system similar to those of antiques.

Moreover, defendant does not bear the burden of convincing the Court that its position is better. Instead, it merely need convince the Court that the decision was not arbitrary and capricious. After considering the parties submissions and the administrative record in the case, the Court is convinced that defendant has met this burden. The ATF's decision was not arbitrary and capricious but rather based on a consideration of relevant factors, which have been considered by the Court and included in the administrative record. Nor was the ATF's interpretation of the GCA impermissible. Deference is particularly appropriate in this case, since the ATF is presumably better able than the Court to make technical distinctions between firearm ignition systems.

## III. Conclusion

For the reasons given above, the Court will grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

---

8. The ATF determines:

(1) whether the weapon is designed to use only a matchlock, flintlock, or percussion cap as an ignition system; or

(2) whether the weapon is designed to use only an ignition system used during the same time period which operates in a manner similar to those ignition systems.
ATF Remand Letter at 3 (May 15, 1998).