[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12605

_____

Agency No. A098-517-544

RUBENS ASPILAIRE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 6, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and SELF,* District Judge.

WILLIAM PRYOR, Chief Judge:

---

* Honorable Tilman Eugene Self III, United States District Judge for the Middle District of Georgia, sitting by designation.

This petition for review requires us to decide whether a Florida conviction for being a felon in possession of a firearm, Fla. Stat. § 790.23(1)(a), is categorically an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(E)(ii). The Board of Immigration Appeals ordered Rubens Aspilaire removed based on his Florida felon-in-possession conviction. Aspilaire argues that his offense is not categorically an aggravated felony because Florida law defines as "firearms" some weapons that would not be considered firearms for purposes of federal law. Florida's antique-firearm exception to its definition of a firearm, Fla. Stat. § 790.001(6), does not apply when an antique firearm is used in the commission of an offense, unlike the federal exception. And Florida's antique-firearm exception does not include all black-powder muzzleloaders, unlike the federal exception. But Aspilaire does not point to his own case or any other prosecution to establish that Florida prosecutes felons for possessing firearms that fall within the federal antique-firearm exception, and Florida's definition of a firearm is not broader than the federal definition on its face. So we deny his petition for review.

## I. BACKGROUND

Rubens Aspilaire is a native and citizen of Haiti. He entered the United States in 2006 and became a lawful permanent resident in 2007. In 2012, Aspilaire was convicted in Florida of possession of marijuana and carrying a concealed

2

firearm. He was sentenced to eight months in the county jail and two years of probation.

After Aspilaire was arrested again in 2014 for violating his probation by possessing a firearm, the Department of Homeland Security initiated removal proceedings. Aspilaire explored options to avoid removal by adjusting his immigration status. He was eventually released from custody in the spring of 2015, and the removal proceedings against him were administratively closed.

But Aspilaire was arrested again in 2015 and charged by the State of Florida with driving a motor vehicle without a valid license, resisting arrest, possessing 20 grams or less of marijuana, trafficking 28 grams or more of cocaine, being a felon in possession of a firearm or ammunition or a concealed weapon, and possessing heroin. The probable cause affidavit prepared in connection with the arrest specified that Aspilaire possessed a "Springfield Armory . . . 9mm" "semi-automatic handgun." After a jury trial, he was convicted of "possession of [a] weapon or ammo" by a felon and sentenced to 12 years of imprisonment.

Following Aspilaire's felon-in-possession conviction, the government moved to re-calendar the closed removal proceeding. It amended the charges against Aspilaire to reflect the 2016 felon-in-possession conviction, which it charged was an aggravated felony under the Immigration and Nationality Act. Aspilaire moved to terminate the removal proceedings. He argued that his Florida

3

felon-in-possession conviction could not trigger deportability for two reasons: because the Florida statute, unlike the federal statute, "[r]elates to ammunition and other non-firearm weapons," namely "[e]lectric [w]eapons," and because Florida's definition of a firearm "[i]ncorporates antique firearms specifically excluded from the federal firearm definition." The immigration judge denied the motion to terminate the removal proceedings and later ordered Aspilaire removed to Haiti.

Aspilaire appealed the removal order to the Board of Immigration Appeals. The Board dismissed the appeal based solely on Aspilaire's 2016 felon-in-possession conviction. It rejected Aspilaire's "electric weapon" argument by "'peek[ing]' at [his] conviction record" to determine "that [the statute of conviction was] a divisible statute with respect to the types of weapons it covers." So it applied the modified categorical approach to look at the jury verdict and determined that Aspilaire was convicted "of possessing a 'firearm or ammunition' to the exclusion of all other weapons," consistent with the generic federal offense.

The Board then turned to Aspilaire's antique-firearm arguments. Aspilaire argued that Florida's definition of a firearm was overbroad because its antique-firearm definition did not include black-powder muzzleloaders like the federal definition, and because it excluded weapons used in the commission of an offense, unlike the federal definition. Citing Supreme Court dicta from *Moncrieffe v. Holder*, 569 U.S. 184 (2013), the Board explained that Aspilaire could carry his

4

burden only by pointing to exemplar prosecutions by Florida of antique weapons. Because he failed to do so, it rejected his arguments.

Aspilaire petitioned for review, but the government moved to dismiss the petition and remand for the Board to reconsider whether *Moncrieffe* requires an alien to point to exemplar prosecutions involving antique firearms. We vacated the removal order and remanded for further proceedings. On remand, the parties did not pursue the *Moncrieffe* question, and the Board issued a new order dismissing the appeal for the same reasons it dismissed the first appeal.

Aspilaire again petitioned for review. He maintains that "[t]he sole issue presented in the instant petition" "is whether removal consequences may be triggered where . . . the Florida 'antique firearms' exception is more narrow than the federal exception" and where "the Florida offense permits conviction of a 'firearms offense' where an otherwise excepted 'antique firearm' is used in the commission of an offense." Neither party discusses the divisibility of Florida's felon-in-possession statute with respect to "electric weapons."

## II. STANDARD OF REVIEW

We review only the decision of the Board of Immigration Appeals, except to the extent that the Board adopts the opinion of the immigration judge. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review *de novo*

5

whether a crime is an aggravated felony for purposes of the Immigration and Nationality Act. *Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1383 (11th Cir. 2018).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain the categorical approach and examine the relevant statutes. Then, we discuss Aspilaire's exemplar-prosecutions argument and conclude that none of the decisions he cites establishes that Florida prosecutes felons for possessing firearms that would be considered antique firearms under the federal definition. Finally, we discuss Aspilaire's statutory-language arguments and explain that Florida's felon-in-possession statute is not broader than the federal statute on its face.

*A.  The Categorical Approach and the Relevant Statutes.*

Under the Immigration and Nationality Act, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The Act defines an "aggravated felony" to include the federal felon-in-possession statute. *Id.* § 1101(a)(43)(E)(ii); 18 U.S.C. § 922(g)(1). And the Act makes clear that "[t]he term [aggravated felony] applies to an offense . . . whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43).

To determine whether a state-law conviction constitutes an aggravated felony under the Act, we apply either the categorical or modified categorical approach, depending on whether the state statute is divisible. *Donawa v. U.S. Att'y*

*Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013). When a state statute is not divisible, we apply the categorical approach and "confine [our] consideration only to the fact of conviction and the statutory definition of the offense." *Id.* "A state offense is an aggravated felony for [Immigration and Nationality Act] purposes only if it *necessarily* involves facts equating the generic federal offense." *Id.* When a state statute is divisible, we apply the modified categorical approach, under which we "expand our inquiry beyond the fact of conviction and also look to the record of conviction—including documents involving the charge, plea agreement, or sentence." *Id.* (internal quotation marks omitted).

The parties agree that the categorical approach applies to the question presented in this petition for review. And in any event, the record does not include any documents that we could use to sharpen our analysis of Aspilaire's antique-firearm arguments under the modified categorical approach. Additionally, Aspilaire does not argue the Board erred by concluding "that [Florida's felon-in-possession statute was] a divisible statute with respect to the types of weapons it covers" and using the modified categorical approach to reject his electric-weapons argument. We express no opinion on the divisibility of the Florida statute.

Aspilaire argues that, under the categorical approach, a Florida felon-in-possession conviction does not necessarily involve facts equating to a federal felon-in-possession conviction because Florida law defines as "firearms" some

7

weapons that would not be considered firearms for purposes of federal law. His arguments involve the scope of both the Florida and the federal antique-firearm exceptions.

For purposes of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), a "firearm" is defined as follows:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. *Such term does not include an antique firearm*.

*Id.* § 921(a)(3) (emphasis added). For purposes of the Florida felon-in-possession statute, Fla. Stat. § 790.23(1)(a), a "firearm" is defined as follows:

> any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. *The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime*.

*Id.* § 790.001(6) (emphasis added).

There is an obvious difference between the two antique-firearm exceptions. A weapon may be considered an antique firearm under federal law—but not under Florida law—if it is used in the commission of a crime. Aspilaire says the overbreadth of Florida's antique-firearm exception as applied to antique firearms used in the commission of a crime means that his Florida felon-in-possession offense is not categorically an aggravated felony.

8

Federal law and Florida law also take different approaches to defining an "antique firearm." For purposes of federal law, an "antique firearm" is defined as:

> (A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; or
>
> (B) any replica of any firearm described in subparagraph (A) if such replica—
> > (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or
> > (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; or
>
> (C) any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder, or a black powder substitute, and which cannot use fixed ammunition. For purposes of this subparagraph, the term "antique firearm" shall not include any weapon which incorporates a firearm frame or receiver, any firearm which is converted into a muzzle loading weapon, or any muzzle loading weapon which can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof.

18 U.S.C. § 921(a)(16).

Florida's definition of an "antique firearm" is similar to the federal definition—in fact, it is more generous to felons with respect to manufacture dates—but it does not include a separate black-powder muzzleloader category:

> "Antique firearm" means any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which

ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

Fla. Stat. § 790.001(1). Aspilaire maintains that the fact that Florida's antique-firearm definition does not include black-powder muzzleloaders like the federal definition means that a violation of Florida's felon-in-possession statute is not categorically an aggravated felony.

Determining that a state statute creates a crime outside the scope of a generic federal crime "requires more than the application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). A petitioner must show a "realistic probability" that a state would apply the statute in the manner he suggests, which he may do by "point[ing] to his own case or other cases in which the state courts in fact did apply the statute" to reach conduct not covered by the equivalent federal statute. *Id.* Alternatively, a petitioner may demonstrate that "statutory language itself, rather than the application of legal imagination to that language, creates [a] realistic probability that a state would apply the statute to conduct beyond" the reach of a federal statute. *Ramos v. U.S. Att'y. Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013) (internal quotation marks omitted).

The Supreme Court has said in dicta that petitioners making antique-firearms arguments may not rely on statutory language alone. *See Moncrieffe*, 569 U.S. at 205–06 ("To defeat the categorical comparison [by pointing to a state's

10

lack of an antique-firearm exception], a noncitizen [*must*] demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms."). We have doubts that requiring exemplar prosecutions in cases involving obviously overbroad language makes sense. But regardless of whether the *Moncrieffe* dicta controls our decision, Aspilaire's arguments fail. We first discuss Aspilaire's exemplar prosecutions before discussing his arguments about the statutory language.

### B. Aspilaire Is Not Entitled to Relief Based on Exemplar Prosecutions.

To show a "realistic probability" that a state statute reaches conduct not covered by the equivalent federal statute, a petitioner may "point to his own case or other cases in which the state courts in fact did apply the statute" in the manner he suggests. *Gonzales*, 549 U.S. at 193. Aspilaire does not assert that his own felon-in-possession conviction involved an antique firearm. But he does point to exemplar prosecutions that he says establish Florida actually prosecutes felons for possession of federal antique firearms.

Aspilaire makes two arguments. We first discuss the exemplar prosecutions Aspilaire presents in support of his argument that Florida's treatment of antique firearms "used in the commission of a crime," Fla. Stat. § 790.001(6), exposes felons to criminal liability for possessing federal antique firearms. We then discuss the exemplar prosecutions he presents in support of his argument that Florida's

11

antique-firearm exception is narrower than the federal exception because it does not cover all black-powder muzzleloaders.

1.  Aspilaire Does Not Point to Exemplar Prosecutions of Felons for Mere Possession of Federal Antique Firearms.

Aspilaire argues that Florida's exclusion from its antique-firearm exception of firearms "used in the commission of a crime," *id.*, means that under Florida law, unlike federal law, "an antique loses its exempted status if it merely is in the hands of a felon." Aspilaire points to two exemplar prosecutions to support his argument: *Margiotti v. State*, 844 So. 2d 829, 830 (Fla. Dist. Ct. App. 2003), and *Williams v. State*, 492 So. 2d 1051, 1054 (Fla. 1986), *receded from by State v. Weeks*, 202 So. 3d 1 (Fla. 2016). Neither decision establishes that Florida prosecutes felons for the mere possession of federal antique firearms.

*Margiotti* does not help Aspilaire because the prosecution did not involve Florida's felon-in-possession statute at all. The court explained that "[d]uring [a] *burglary*, the defendant used an antique, inoperable firearm." 844 So. 2d at 830 (emphasis added). Florida law provides for a mandatory minimum sentence when a firearm is possessed during the commission of a burglary. Fla. Stat. § 775.087(2)(a)1.d. *Margiotti* held that an antique firearm counts as a firearm for the purpose of triggering a mandatory minimum sentence. 844 So. 2d at 831. The decision has no bearing on Florida's felon-in-possession statute, so it does not help Aspilaire.

*Williams* is at least on point, but it does not help Aspilaire either. In *Williams*, the Florida Supreme Court affirmed a felon-in-possession conviction and rejected the defendant's antique-firearm argument because the court "[did] not believe that the legislature . . . intended that a convicted felon could be acquitted when possessing a concealed, loaded weapon by using the excuse that the weapon is an antique or a replica thereof." 492 So. 2d at 1051, 1054. It continued, "This literal requirement of the statute exhalts form over substance to the detriment of public policy, and such a result is clearly absurd." *Id.* at 1054.

But *Williams* is also useless to Aspilaire because it is no longer good law. In *Weeks*, the Florida Supreme Court held that a defendant "was entitled to the statutory exception of the felon-in-possession statute because his firearm was a permissible 'replica' of an 'antique firearm.'" 202 So. 3d at 9–10. And it receded from the *Williams* decision to the extent the statutory interpretation in that decision was inconsistent. *Id.* at 9. *Weeks* does more than undermine Aspilaire's only on-point exemplar prosecution; it proves that Florida does *not* expose felons to criminal liability for mere possession of an antique firearm.

Aspilaire argues that *Weeks* cannot apply retroactively to deprive him of the benefit of *Williams* because he was convicted before *Weeks* was decided, but his argument misunderstands the nature of judicial decisions. "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*,

13

215 U.S. 349, 372 (1910) (Holmes, J., dissenting); *see also* Bryan A. Garner et al.,

*The Law of Judicial Precedent* § 37, at 308–10 (2016). So "[a] judicial

construction of a statute is an authoritative statement of what the statute meant

before as well as after the decision of the case giving rise to that construction."

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994). When a court

corrects a wrong interpretation of a statute, "it is not accurate to say that [the

decision] 'changed' the law." *Id.* at 313 n.12; *see also Lester v. United States*, 921

F.3d 1306, 1312 (11th Cir. 2019) (W. Pryor, J., respecting the denial of rehearing

en banc) ("[W]e [must] be mindful of the difference between a change in judicial

doctrine and a change in law."). The same principle applies under Florida law. *See*

*Hester v. State*, 267 So. 3d 1084, 1086 (Fla. Dist. Ct. App. 2019) (quoting *Rivers*,

511 U.S. at 313 n.12). The prosecution in *Williams* was never valid under Florida

law, so Aspilaire may not rely on it as an example of how Florida law applies.

### 2.  Aspilaire Does Not Point to Exemplar Prosecutions of Felons for Possessing Black-Powder Muzzleloaders.

Aspilaire also argues that Florida's antique-firearm exception is narrower

than the federal exception because it does not cover all black-powder

muzzleloaders. He points to two exemplar prosecutions to support his argument:

*Weeks*, 202 So. 3d 1, and *Bostic v. State*, 902 So. 2d 225 (Fla. Dist. Ct. App. 2005),

*disapproved of by Weeks*, 202 So. 3d 1. Neither decision establishes that Florida

14

prosecutes felons for possessing black-powder muzzleloaders that would be considered antique firearms under federal law.

As we have already discussed, *Weeks* cuts *against* Aspilaire's argument. The Florida Supreme Court held that the black-powder muzzleloader possessed by the defendant *was* considered an antique firearm under Florida law, and it reversed his felon-in-possession conviction. 202 So. 3d at 9–10. In doing so, the Florida Supreme Court disapproved of the intermediate court's contrary decision in *Bostic*, the other decision Aspilaire cites as an exemplar prosecution, and established that the *Bostic* prosecution was unlawful. *Id.* at 9. For the same reasons he cannot rely on the repudiated *Williams* decision, Aspilaire cannot rely on *Bostic*.

Aspilaire was required to support his antique-firearm arguments by pointing to successful Florida felon-in-possession prosecutions involving federal antique firearms. *Moncrieffe*, 569 U.S. at 206. But the decisions he cites involved prosecutions for other crimes, *Margiotti*, 844 So. 2d at 830; unsuccessful prosecutions, *Weeks*, 202 So. 3d at 9–10; or unlawful prosecutions based on the misapplication of Florida law, *Williams*, 492 So. 2d at 1054, *receded from by Weeks*, 202 So. 3d 1; *Bostic*, 902 So. 2d at 228–29, *disapproved of by Weeks*, 202 So. 3d 1. So he has not satisfied his burden.

15

*C. Aspilaire Is Not Entitled to Relief Based on the Statutory Language.*

Aspilaire also argues he is entitled to relief because Florida's definition of a firearm is broader than the federal definition on its face, so that "the statutory language itself . . . creates the realistic probability that [Florida] would apply [its felon-in-possession] statute to conduct beyond" the reach of the federal statute. *Ramos*, 709 F.3d at 1072. [Bl. Br. at 27–28]. Even assuming that Aspilaire may rely solely on the statutory language without pointing to exemplar prosecutions, *see Moncrieffe*, 569 U.S. at 205–06, his arguments are based on "the application of legal imagination" to Florida's antique-firearm exception, not a "realistic probability" of prosecution created by "the statutory language itself." *Ramos*, 709 F.3d at 1072 (internal quotation marks omitted). So he is not entitled to relief.

Start with Aspilaire's argument that Florida's felon-in-possession statute is overbroad based on the exclusion of antique firearms "used in the commission of a crime" from Florida's antique-firearm exception. Fla. Stat. § 790.001(6). Aspilaire says this difference means that "Florida punishes [the possession of] an otherwise-qualifying antique firearm . . . even in offenses as simple as 'felon in possession.'" Aspilaire's interpretation of the phrase "used in the commission of a crime" is linguistically implausible. *Cf. Bailey v. United States*, 516 U.S. 137, 142–43 (1995) (holding that the word "uses" in the phrase "during and in relation to any crime of violence or drug trafficking crime, uses or carries a firearm," "must connote more

16

than mere possession" (alteration adopted) (internal quotation marks omitted)). And the Florida Supreme Court rejected his interpretation when it concluded that a felon *was* entitled to the benefit of the antique-firearm exception in *Weeks*. 202 So. 3d at 9–10.

"The ordinary meaning[] of the word[] 'use[']' . . . connote[s] activity beyond simple possession." *Bailey*, 516 U.S. at 145 (alteration adopted) (internal quotation marks omitted). And that ordinary meaning applies in the context of Florida's criminal code. Florida law draws a clear distinction between the "use" and "possession" of a firearm. *See* Fla. Stat. § 775.087(2)(a)1. ("Any person who is convicted of [an enumerated] felony . . . , regardless of whether the *use* of a weapon is an element of the felony, . . . and during the commission of the offense, such person actually *possessed* a 'firearm' . . . , shall be sentenced to a minimum term of imprisonment of 10 years[.]" (emphasis added)). Aspilaire's "use" argument does not find support in "the statutory language itself." *Ramos*, 709 F.3d at 1072.

Next, consider Aspilaire's argument that Florida's felon-in-possession statute is overbroad because Florida's antique-firearm exception does not cover all black-powder muzzleloaders. To be sure, Florida does not classify muzzleloaders as antique firearms on the same basis as the federal government. The federal government defines antique firearms partially by reference to their loading

17

configurations and propellants. 18 U.S.C. § 921(a)(16)(C) (defining as an antique firearm "any muzzle loading rifle . . . designed to use black powder, or a black powder substitute"). Florida instead defines antique firearms partially by reference to their ignition systems. *Weeks*, 202 So. 3d at 9 ("[S]ection 790.001(1) emphasizes the ignition system as the distinctive feature of an 'antique firearm,' and therefore requires that the firearm possess a certain type of ignition system explicitly mentioned by the statute."). Aspilaire assumes the Florida ignition-system approach fails to cover weapons covered by the federal loading-configuration-and-propellant approach.

But both approaches lead to the same results. Gunsmiths cannot freely combine different propellants and ignition systems—firearms technologies work only in specific combinations. Black-powder muzzleloaders generally use a "matchlock, flintlock, percussion cap, or similar early type of ignition system," Fla. Stat. § 790.001(1), so they are typically considered antique firearms under Florida law by virtue of their ignition systems, *see* Toby Bridges, *Muzzleloading* 12–21 (1997) (tracing the history of "muzzleloader ignition systems" through the "matchlock, wheellock, snaphaunce, miquelet, flintlock, percussion caplock[,] and in-line percussion caplock"). In fact, Florida's unlawful prosecutions of black-powder weapons involved a "black powder muzzleloader rifle with a *percussion cap ignition system*," *Weeks*, 202 So. 3d at 3 (emphasis added), and "an *in-line*

18

*percussion-cap*, black-powder weapon," *Bostic*, 902 So. 2d at 230 (Sharp, J., dissenting) (emphasis added).

To be sure, changes in firearms technology could create close questions under Florida's ignition-system approach. *See, e.g.*, *Mod. Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 36–37 (D.D.C. 1998) (deferring to agency interpretation that classified primer-based ignition system as non-antique); U.S. Patent No. 7,197,843 B2 (patent for electronic black-powder ignition system). But dreaming up hypothetical weapons designed to probe the boundaries of a state's antique-firearm exception involves "the application of legal imagination." *Ramos*, 709 F.3d at 1072 (internal quotation marks omitted). The possibility of close questions in future cases does not prove that "the statutory language . . . creates the realistic probability that [Florida] would apply the statute to conduct beyond" the reach of the federal statute. *Id.* (internal quotation marks omitted). Florida's felon-in-possession statute is not broader than the federal statute on its face, so Aspilaire is not entitled to relief based on the statutory language.

## IV. CONCLUSION

We **DENY** Aspilaire's petition for review.

19