[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14738

Non-Argument Calendar

_____

BLANCA ARACELY LOVO DE PEREZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-854-084

_____

Before JILL PRYOR, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Blanca Aracely Lovo de Perez seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her application for cancellation of removal. She argues that the BIA applied an incorrect legal standard when it found that she had not shown sufficient hardship to her U.S. citizen children to be eligible for cancellation of removal. She also argues that the BIA violated her minor children's rights to substantive due process and equal protection under the Fifth Amendment when they were separated as a result of denying her relief. Because we find that both arguments lack merit, we dismiss this petition in part and deny it in part.

I.

Lovo de Perez is a native and citizen of El Salvador who arrived in the United States without inspection at an unknown place and time. On February 3, 2020, the Department of Homeland Security served her with a notice to appear, which charged that she was removable for being present without being admitted or paroled. 8 U.S.C. § 1182(a)(6)(a)(i). She conceded removability but applied for cancellation of removal in April 2020. As the basis of her application, Lovo de Perez asserted that she had lived in the United States since 2003 and her removal would result in excep-

tional and extremely unusual hardship to her two U.S. citizen children.

At her hearing before an IJ, she testified that she entered the U.S. illegally in 2003 at the age of 24.  She testified that she went to South Carolina, where she had lived ever since.  She said that she worked in different jobs—construction, cleaning up trash, in restaurants, and cleaning houses—earning her a weekly income of around $300–$350.  She testified that she separated from her husband in El Salvador and had not spoken to him since 2003.  Lovo de Perez testified that she had four children, and three of them—two minor U.S. citizens and a 25-year-old Deferred Action for Childhood Arrivals ("DACA")[1] recipient born in El Salvador— lived with her in South Carolina.  At the time of the hearing, her minor children were 13 and 15 years old.  She also testified that she had a boyfriend, Hector, in the United States for ten years.  Hector did not have legal status, and they had no children together.  She testified that they lived together and he helped to pay some of the bills.  Although the father of the two U.S. citizen children lived in South Carolina, they basically had no contact, and he was arrested for failing to pay child support to Lovo de Perez.

---

[1] DACA is a program started in 2012 with the goal of providing immigration relief to certain young people who were children when they arrived in the United States. *DHS v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1901 (2020).  DACA works by deferring immigration action against these individuals for certain periods and treating these individuals as "lawfully present" for the purposes of certain government benefits.  *Id.* at 1902.

4                    Opinion of the Court                20-14738

She also testified that she did not know what would happen to her minor children. She said that her current boyfriend disliked the minor children, that her husband in El Salvador would not take them in, and that the adult DACA recipient would go to live with his own girlfriend. If they went with her to El Salvador, the minor children did not speak sufficient Spanish and would not know anyone there. The family members she did have in El Salvador were impoverished and would be unable to help her. The DACA recipient son testified at the hearing that if she were deported, Lovo de Perez would likely take his two younger U.S. citizen brothers with her to El Salvador—but also testified that he would take care of them if there was no other option. He stated that it would be difficult for him given his young age and the fact that he wanted to start his own life. Lovo de Perez also testified that, because of her age, she would likely be unable to get work in El Salvador if she were deported, and she and her sons would live in poverty.

The IJ issued an oral decision denying the application for cancellation of removal. Although he found Lovo de Perez credible, the IJ also found that she had two convictions for driving without a license and one for driving under the influence. The IJ found that her criminal history disqualified her for cancellation of removal for lack of good moral character. The IJ next determined that even if she met the requirement of good moral character, she failed to show exceptional and extremely unusual hardship. The IJ believed that it was unclear where her sons would go, but that

her minor sons were young, healthy, and could adapt. The IJ found nothing in the record to support Lovo de Perez's assertion that she could not get a job in El Salvador and also explained that economic hardship alone was not sufficient to show hardship. Accordingly, the IJ denied her application.

Lovo de Perez appealed the IJ's decision, and the BIA affirmed. It agreed that she failed to show exceptional and extremely unusual hardship—that she failed to show that her U.S. citizen children would become homeless if they stayed in the United States, and they were otherwise healthy. Therefore, the BIA dismissed the appeal.

## II.

We review the BIA's decision as the final judgment unless the BIA expressly adopted the IJ's decision, in which case we review both decisions. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). When the BIA explicitly agrees with the determinations of the IJ, we will review the decision of both the BIA and the IJ. *Id.* at 948. We review *de novo* whether we have subject matter jurisdiction to consider a petition for review. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

The Attorney General has discretion to cancel the removal of a non-permanent resident if that alien (1) has been physically in the United States for a continuous period of not less than 10 years, (2) has been a person of good moral character, (3) has not been

convicted of certain criminal offenses, and (4) establishes that her removal would result in exceptional and extremely unusual hardship to a minor child, spouse, or parent who is a U.S. citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1). If all of these factors are met, then, and only then, may the Attorney General exercise the discretion to cancel removal. *Id.*; *see Said v. U.S. Att'y Gen.*, 28 F.4th 1328, 1330 (11th Cir. 2022). The Attorney General has delegated this discretion to the IJs within the United States Citizenship and Immigration Services. § 1229a(a)(1); 8 CFR §§ 1240.1(a)(1), 1245.2(a)(1)(i).

Pursuant to the discretionary decision jurisdictional bar, we lack jurisdiction to review "any judgment regarding the granting of" cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i); *see also Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (en banc), *aff'd*, *Patel v. Garland*, No. 20-979, slip. op. at 17, 2022 WL 1528346 (U.S. May 16, 2022).[2] Notwithstanding this jurisdictional bar, however, we may review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); *Patel*, 971 F.3d at 1262. Our jurisdiction, though, extends only to genuine, colorable constitutional or legal claims, as "a party may not dress up a claim with

---

[2] The Supreme Court in *Patel* agreed with the analysis of our en banc panel—that is, the federal courts are precluded from reviewing factual determinations as part of the BIA's decisions on an application for cancellation of removal. *Patel*, No. 20-979, slip op. at 8–9, 17. This is contrasted with legal and constitutional claims, which we do have subject matter jurisdiction to review. *Id.* at 9; § 1252(a)(2)(D).

legal or constitutional clothing to invoke our jurisdiction." *Patel*, 971 F.3d at 1272; *see Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196–97 (11th Cir. 2008) (stating that a "garden-variety abuse of discretion argument" that the IJ failed to properly weigh the facts does not amount to a legal question). To be "colorable," a claim must have "some possible validity." *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 & n.2 (11th Cir. 2007).

Aliens do not have a liberty interest in purely discretionary forms of relief that is protected by the procedural component of the Due Process Clause. *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008). Likewise, substantive due process is unavailable as a claim for children of deported aliens because "[l]egal orders of deportation to [the] parents [of U.S. citizen children] do not violate any constitutional right of citizen children." *Gonzalez-Cuevas v. INS*, 515 F.2d 1222, 1224 (5th Cir. 1975).[3] Moreover, under the equal protection component of the Due Process Clause of the Fifth Amendment, statutory classifications of immigrants are subject to minimal scrutiny. *Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1328–29 (11th Cir. 2014). Under this standard, "the alien bears the burden of establishing that the government regulation is arbitrary or unreasonable and not rationally

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that we are bound by former Fifth Circuit decisions issued on or before September 30, 1981).

related to the government's purpose." *Id.* at 1329 (brackets omitted).

## III.

Lovo de Perez makes two arguments on appeal. Lovo de Perez first argues that the BIA applied an improper legal standard—by improperly focusing on her children's health, rather than considering all the hardship factors cumulatively. She acknowledges that the BIA stated that it considered the hardship factors in the aggregate, but argues that it primarily focused on the children's lack of medical conditions and failed to give proper weight to any other factor. She also states that the BIA failed to fully consider the effects of the economic hardship her deportation would cause. Second, she argues that the decision to deny her cancellation of removal violated her and her minor children's rights to substantive due process and equal protection, because the separation of parents and their minor children violates their right to family integrity and familial association. In other words, she argues that she is immune from deportation as a result of these substantive rights.

We lack jurisdiction to review Lovo de Perez's first argument because, though it is couched as a question of law, in substance it challenges the agency's weighing of the hardship factors. That argument, at its core, is simply another way of challenging an IJ's discretion, which we lack the jurisdiction to review. *Patel*, 971 F.3d at 1280 ("[T]he BIA's factfinding, factor-balancing, and

exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them." (quoting *Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) (internal quotation marks omitted)); *Alvarez Acosta*, 524 F.3d at 1196–97.

Her equal protection claim is also not colorable because she does not attack any statutory classification or argue that the statute fails rational basis review. *See Rivas*, 765 F.3d at 1328–29.

Finally, Lovo de Perez's due process claim fails on the merits, as she has no substantive right to discretionary relief from removal, and lawful orders of deportation of parents of minor U.S. citizen children do not violate the citizen children's due process rights. *Scheerer*, 513 F.3d at 1253; *Gonzales-Cuevas*, 515 F.2d at 1224. Accordingly, we dismiss the petition in part and deny it in part.

**PETITION DISMISSED IN PART AND DENIED IN PART.**