[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-13908

_____

SOLOMON CHAMU,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-236-525

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

GRANT, Circuit Judge:

Mexican national Solomon Chamu entered the United States without inspection and subsequently committed several crimes. When the government eventually placed him in removal proceedings, he applied for cancellation of removal—a form of discretionary relief that allows otherwise removable persons a chance to stay in the country. But that limited relief is unavailable to anyone convicted of an offense "relating to a controlled substance" as defined by federal law. 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i). And one of the offenses that Chamu had committed was cocaine possession under Florida law.

Chamu argues that his conviction does not bar cancellation because Florida's cocaine possession statute covers more conduct than its federal counterpart and is therefore not "related to" a federally controlled substance. He offers two reasons this is true: first, the state's definition of cocaine extends to substances not prohibited under federal law, and second, Florida's possession law does not require knowledge that the substance is illegal. We disagree. Because Chamu has not met his burden of showing that Florida's cocaine statute covers more substances than the federal statute, his conviction prevents cancellation of removal.

I.

Chamu was born in Mexico and entered the United States without inspection in 1990. Thirteen years later, he was arrested for and pleaded guilty to cocaine possession under Florida Statute

§ 893.13(6)(a).  And fourteen years after that, he was ordered to appear in a removal proceeding.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Chamu conceded that removal was proper.  But he also applied for cancellation of his removal, alleging that his mother and children would suffer exceptional hardship if it were carried out.

Cancellation is a form of discretionary relief allowing certain immigrants who are otherwise removable, but who also have an exceptional reason to remain in the United States, to do so.  *See* 8 U.S.C. § 1229b(b).  Good behavior is an essential prerequisite to this relief.  One limitation is for drug crimes; cancellation is unavailable for those who have been convicted of a state offense "relating to a controlled substance (as defined in section 802 of title 21)" of the United States Code.  8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i).  Section 802, in turn, defines "controlled substance" as any substance included in one of five federal controlled substance schedules.  21 U.S.C. § 802(6).  A conviction of an offense "relating to" one of those controlled substances makes an alien ineligible for cancellation of removal.  *See* 8 U.S.C. §§ 1229b(b)(1)(C).

Recognizing that his Florida cocaine possession conviction would pose a problem for his cancellation request, Chamu attempted to have it vacated in state court while his application was pending before an immigration judge.  After that strategy predictably failed, Chamu shifted his approach, arguing that the Florida statute was too broad to bar his cancellation request because Florida considers some substances to be cocaine that the

federal government does not.  He also claimed that the Florida statute was too broad because it covered more states of mind than its federal counterpart—that is, the Florida possession statute alone presumes that a defendant knows a possessed substance is illegal, whereas federal law requires proof of knowledge.  The immigration judge rejected Chamu's contentions and found him ineligible for cancellation.

With a declaration from a chemistry expert in hand, Chamu repeated his overbreadth argument in front of the Board of Immigration Appeals, placing particular weight on the textual differences between the state and federal statutory definitions of cocaine.  He also repeated his mens rea argument.

The Board dismissed Chamu's appeal.  It accepted for the sake of argument that his expert's declaration was accurate, and thus that the Florida and federal definitions of cocaine weren't a perfect match.  But it concluded that the mismatch made no difference.  To prevail, Chamu needed to show "a realistic probability, not a theoretical possibility," that the Florida statute covered more than its federal counterpart.  See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).  And while Chamu might have shown a theoretical difference in statutory scope, the Board concluded that he had not shown a realistic probability that the Florida statute would be enforced more broadly.  The Board also concluded that the federal statutes at issue contained no mens rea requirement.  Chamu petitions for review of the Board's decision.

## II.

We review questions of law raised in a petition for review of a Board of Immigration Appeals decision de novo.  8 U.S.C. § 1252(a)(2)(D); *Choizilme v. U.S. Att'y Gen.*, 886 F.3d 1016, 1022 (11th Cir. 2018).  But we review the Board's findings of fact for substantial evidence, meaning that we must affirm the Board's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (quotation omitted).  We consider only issues the Board actually reached, and because the Board did not expressly adopt the immigration judge's decision or rely on its reasoning, we review only the Board's decision.  *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

## III.

Chamu is ineligible for cancellation if he has been convicted of an offense relating to a controlled substance banned under federal law.  *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i).  He admits that in 2003 he was convicted of a violation of Florida's cocaine possession statute.  *See* Fla. Stat. § 893.13(6)(a).  The only path open to him, then, is to show that his conviction was not for an offense "relating to a controlled substance" as federally defined.

We apply the categorical approach in comparing the Florida and federal offenses.  That means we do not consider the facts

6                    Opinion of the Court                19-13908

specific to Chamu's conviction. *See Kawashima v. Holder*, 565 U.S. 478, 483 (2012). Instead, we look "to the statute defining the crime of conviction" to decide whether convictions under the state statute "necessarily entail" the conduct that triggers federal immigration consequences. *Id.*; *Shular v. United States*, 140 S. Ct. 779, 784 (2020) (quotation omitted). If a conviction under the Florida cocaine possession statute always relates to a federally controlled substance—that is, if the substances proscribed by the Florida law are all federally controlled substances—then the state conviction triggers immigration consequences. *Cf. Kawashima*, 565 U.S. at 483–85.

Chamu argues that Florida's cocaine possession statute fails this test in two ways. First, it defines cocaine too broadly; and second, it presumes that the possessor knows that a possessed substance is illegal. Both arguments fall short.[1]

---

[1] The government argues that our precedent requires us to reject Chamu's petition without reaching the merits because we previously stated in *Guillen v. U.S. Attorney General* that "convictions for possession of cocaine relate to a controlled substance as defined by federal law." 910 F.3d 1174, 1179 (11th Cir. 2018). But this argument misreads *Guillen*. There, we held that Florida Statute § 893.13(6)(a)—the statute under which Chamu was convicted—was divisible as to the identity of a controlled substance; in other words, we explained that "the identity of the substance possessed is an element of possession." *Id.* at 1182. This case presents an entirely different question: whether "cocaine" as defined by Florida law fits entirely within the federal definition of cocaine. Our application of the categorical approach in resolving that question here is consistent with *Guillen* and does not affect our holding in that case.

## A.

We begin with the definition of cocaine. Chamu's argument rests on the difference in statutory language between Florida's definition of cocaine and the federal definition. The crux of the matter is that the two statutes refer to different types of cocaine isomers. Isomers, as we will address in more detail later, are chemical compounds that share a formula but are differently structured. Florida's cocaine definition includes one subset of isomers: "any of [cocaine's] stereoisomers." Fla. Stat. § 893.03(2)(a)(4) (2003). The federal definition, at least on its face, describes another: cocaine's "optical and geometric isomers." 21 U.S.C. § 812(c), Sched. II(a)(4) (2003).

The Supreme Court has made clear that litigants who contend that state statutes are broader than their federal analogues must come prepared. They cannot simply apply "legal imagination to a state statute's language" and hope to prevail. *Duenas-Alvarez*, 549 U.S. at 193. A relevant difference exists only when there is "a realistic probability, not a theoretical possibility," that the State would apply its statute to conduct that does not meet the federal standard. *Id.* The simplest way for an offender to show that realistic probability is to point to a case in which the state statute was used to prosecute such conduct. *See id.*

Chamu offers no sample prosecution here—but that is not the only way forward, at least in this Circuit. We explained in *Ramos v. U.S. Attorney General* that an offender need not produce a sample prosecution "when the statutory language itself, rather

than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." 709 F.3d 1066, 1072 (11th Cir. 2013) (quotations omitted). *Ramos* thus allows a litigant to use facially overbroad statutory text to meet the burden of showing the realistic probability that the state law covers more conduct than the federal. But it does not lift the burden entirely; a litigant still must show that any textual differences carry actual legal consequences. When state and federal statutes "do not diverge to any significant degree"—that is, when a state statute with "different terminology" is nonetheless "no broader than the federal standard"—no realistic probability of broader prosecution exists. *Bourtzakis v. U.S. Att'y Gen.*, 940 F.3d 616, 624–25 (11th Cir. 2019). Different words alone are not enough.

Even so, Chamu rests his argument entirely on the facial inconsistencies between the federal and state cocaine statutes, attempting to persuade us that the obvious differences between the two are enough to carry his burden. The federal statute indeed omits a subcategory of cocaine isomers that the state statute does not. But that omission is meaningless if the subcategory is a null set—if so, the state statute covers exactly the same substances as the federal.

A closer look at the scientific terms found in the statutes helps explain how that is possible. To start, isomers are chemical compounds with "the same formula but a different arrangement of atoms in the molecule and different properties." *New Oxford*

19-13908              Opinion of the Court              9

*American Dictionary* 921 (3d ed. 2010).  In other words, they are chemicals made from the same number and type of elements combined in different ways.  Stereoisomers are one set of isomers, those that differ "only in the spatial arrangement of their atoms"— all the atoms are linked in the same order, but each chemical's 3D shape is slightly different.  *Id.* at 1709.  Stereoisomers can be further divided into three categories: optical isomers, geometric isomers, and nongeometric diastereomers.[2]

Florida's statutory definition of cocaine includes cocaine's stereoisomers, while the federal definition includes only two subsets of cocaine's stereoisomers—that is, optical isomers and geometric isomers (which are themselves a subset of diastereomers).  *Compare* Fla. Stat. § 893.03(2)(a)(4) (2003), *with* 21 U.S.C. § 812(c), Sched. II(a)(4) (2003).  So, Chamu argues, some stereoisomers—nongeometric diastereomers—could conceivably be covered by Florida's definition but not the federal definition.

---

[2] Stereoisomers, for what it is worth, are usually divided into two categories: optical isomers (also called enantiomers) and diastereomers.  *See* John McMurry, *Organic Chemistry* 297, 302, 310 (7th ed. 2008).  The diastereomer category can be subdivided further.  Some diastereomers are also geometric isomers.  *See id.* at 302, 310; L.G. Wade, Jr., *Organic Chemistry* 57–58 (4th ed. 1999).  We use the catchall term "nongeometric diastereomers" to describe all other isomers that fit into the diastereomer category.

The terms "optical isomer" and "geometric isomer" are no longer as common as they once were, though they are still easily understood by chemists.  *See* Wade, *Organic Chemistry*, at 221 (defining both terms in more modern language).  We retain the statutory language here for the sake of clarity.

The shaded portion of the diagram below illustrates the subset of stereoisomers in question.



Chamu's argument makes sense so far: stereoisomers include at least one chemical subset that is not listed in federal law—nongeometric diastereomers. The problem is that the argument goes no further. Even if some chemical compounds have nongeometric diastereomers, nothing in the record suggests that cocaine has any, let alone that they exist in the quantities required for an offender to be prosecuted for possessing them. If cocaine does not have a nongeometric diastereomer, then the two statutes cover exactly the same ground.

We "would not find overbroad a state statute criminalizing the possession of dangerous animals, defined to include dragons, if the relevant federal comparator outlawed possession of the same animals but did not include dragons"—unless, of course, the offender provided evidence that dragons actually exist. *See United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1155 (9th Cir. 2020). Chamu shoulders the burden here, and he offers no proof to support his allegation that an existing cocaine stereoisomer falls outside the federal definition. We decline to hold that Florida's statute is broader than its federal counterpart based only on the possibility that it *might* be so.

Chamu insists that his expert's declaration provides the necessary proof that some types of cocaine criminalized in Florida are allowed under federal law. He repeatedly points to the declaration's conclusion that "[s]ince there are diastereomers that are not geometric isomers, the Florida definition of cocaine, which encompasses all stereoisomers of cocaine, is broader than the federal definition, which encompasses optical isomers and geometric isomers (a subtype of diastereomer)." But that statement does nothing more than describe the chart we included a few paragraphs back. The declaration establishes only that, as a matter of chemistry, some substances have stereoisomers that are neither optical isomers nor geometric isomers.

The statutes here, however, specifically describe isomers of cocaine. And the declaration conspicuously fails to assert the existence of a cocaine stereoisomer that falls outside the federal

definition.  As the Board explained, Chamu's expert "conclusively states that Florida's definition of cocaine is broader," but "gives no examples of an actual isomer that is a diastereomer but not a geometric isomer of cocaine."

Chamu attempts to fill the declaration's gap in his appellate arguments.  He has suggested to this Court at various times that particular substances are covered by the Florida statute and not by federal law.  Even assuming these new assertions have any scientific basis (which, candidly, we seriously doubt), what matters to this Court right now is that they have no basis in the record.  We may only reverse the Board on a factual finding if we find that "the record not only supports reversal, but compels it."  *Kazemzadeh*, 577 F.3d at 1351 (quotation omitted).  Here, the record is devoid of evidence supporting Chamu's theory.[3]

Chamu urges us to consider other cases across the federal system, arguing that his theory has been "raised with success elsewhere."  But that path is also a dead end.  The cases cited by Chamu involve different state statutory definitions and different burdens of proof.  *See United States v. Ruth*, 966 F.3d 642, 647–48 (7th Cir. 2020) (placing the burden of proof on the government in the sentencing context); *United States v. Fernandez-Taveras*, 511

---

[3] We do not mean to suggest that identifying a specific chemical compound covered by state (and not federal) law is sufficient to show a realistic probability of prosecution.  More is likely required.  But at least identifying such a substance is a necessary first step.

F. Supp. 3d 367, 373–74 (E.D.N.Y. 2021) (involving a broader state statutory definition).  They are not in tension with our own decision.

In fact, we are not the only Circuit to hold that differing statutory language does not automatically create a reasonable probability under *Duenas-Alvarez*.  The Fifth Circuit refused to hold that a Texas cocaine definition was broader than the federal definition when the defendant could not offer a sample prosecution.  *Alexis v. Barr*, 960 F.3d 722, 726, 729 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 845 (2020).  And the Ninth Circuit held that a California law covering methamphetamine's geometric isomers (where the federal law did not) was not overbroad.  *Rodriguez-Gamboa*, 972 F.3d at 1149–50, 1155.  The court relied on unrebutted testimony in the district court establishing that "geometric isomers of methamphetamine do not chemically exist." *Id.* at 1155.  Of course, no such testimony was offered here—but neither was any proof that the disputed cocaine isomers *do* exist. And that dearth of evidence is fatal for Chamu, who bears the burden of proof.

Because of the state of the record, we cannot hold that Florida's definition of cocaine is completely consistent with the federal definition.  But we do hold that Chamu has failed to prove that it covers more substances. *See Alexis*, 960 F.3d at 729.  Positing the hypothetical existence of a form of cocaine that has slipped through the cracks of federal legislation is no more than "legal imagination" conjuring up a "theoretical possibility"—a practice

forbidden by the Supreme Court. *Duenas-Alvarez*, 549 U.S. at 193. Chamu gives us no reason to disturb the Board's conclusion that his theory is "highly improbable."

### B.

Chamu also posits that Florida's cocaine possession statute is problematic in another way: he says it does not require the state to prove that a defendant knew the possessed substance was illegal. Chamu suggests that the federal immigration statutes at issue "invoke generic offenses" that must be compared to Florida's statute, and he concludes that knowledge of a substance's illicit nature is an "essential element" of the generic federal crime of cocaine possession. He argues that Florida's statute lacks that element and is "completely dissonant with the federal offense"—so it cannot trigger immigration consequences. The argument falls short on a fundamental level.

To begin, Chamu misconceives how the categorical approach applies here. As the Supreme Court explained in *Shular*, that approach has two forms. 140 S. Ct. at 783. When a statute invokes the generic version of a crime—say "burglary" or a "drug trafficking crime"—then a court must discern "the elements of the offense as commonly understood" and compare them to the ones in the state statute of conviction. *Id.* (quotation omitted). The mens rea, of course, can be one of those elements. *See, e.g., Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1281–82 (11th Cir. 2013).

19-13908                Opinion of the Court                15

But other statutes requiring the categorical approach "ask the court to determine not whether the prior conviction was for a certain offense, but whether the conviction meets some other criterion." *Shular*, 140 S. Ct. at 783. To apply the categorical approach to these statutes, a court must assess whether convictions under the state statute "necessarily entail" the criterion described by the federal statute. *Id.* at 784 (quotation omitted).

Here, that criterion is whether the state statute involves conduct "relating to a controlled substance." *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i). The phrase "controlled substance" does not describe an offense, but a physical thing. And the federal immigration statutes say that convictions under a state statute relating to this physical thing, the controlled substance, carry immigration consequences. *See Mellouli v. Lynch*, 575 U.S. 798, 813 (2015). What the federal immigration statutes do *not* reference is mens rea. We thus have nothing to compare between the federal and statute statutes; Florida's mens rea requirements, whatever they may be, are irrelevant.[4]

---

[4] We do note that Chamu "overstates Florida's disregard for *mens rea*." *See Shular v. United States*, 140 S. Ct. 779, 787 (2020). Florida law, it is true, presumes that the possessor of a controlled substance knows of the substance's illicit nature. Fla. Stat. § 893.101(3). But it also allows a defendant to assert an affirmative defense that he lacked such knowledge. *Id.* § 893.101(2). The Supreme Court has indicated that Florida's scheme is permissible. *See Shular*, 140 S. Ct. at 787. So even if the statute were to list a generic possession offense, the gap, if it exists at all, is not what Chamu suggests.

For his part, Chamu asks us to apply the offense-based categorical approach, and to add a mens rea requirement to the federal immigration statutes in order to do so.  We decline that invitation, mindful that "courts obviously must follow Congress' intent as to the required level of mental culpability for any particular offense." *See United States v. Bailey*, 444 U.S. 394, 406 (1980).  We also decline to accept his novel interpretation of *Shular*, which he contends shows that any statutory language *other than* "involving" (the word used in the statute at issue in that case) must require an illicit-nature mens rea whenever the categorical approach is applied.  That interpretation both misreads *Shular* and applies an offense-based categorical comparison that is not relevant here.

We thus hold that no illicit-nature mens rea is necessary to trigger removal consequences for offenses listed under 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) and 1227(a)(2)(B)(i).

★    ★    ★

Chamu has failed to show that Florida's definition of cocaine covers more than its federal counterpart.  And the lack of an explicit illicit-nature mens rea element in the Florida statute does not invalidate the immigration consequences of his conviction.  We therefore **DENY** Chamu's petition.