[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12917

Non-Argument Calendar

_____

FUAD FARES FUAD SAID,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A061-822-928

_____

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Fuad Fares Fuad Said seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal. He argues that he satisfied his burden of demonstrating his eligibility for cancellation of removal for certain lawful permanent residents because his violation of Fla. Stat. § 893.13(6)(a) did not relate to a controlled substance, as defined in 21 U.S.C. § 802, and, thus, did not prevent him from accruing the necessary seven-year period of continuous residence.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision or agrees with the IJ's reasoning. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). We review the BIA's legal determinations *de novo*. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860 (11th Cir. 2007); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S. Ct. 2778, 2781–83 (1984) (noting that deference applies only "[w]hen a court reviews an agency's construction of the statute which it administers").

Under INA § 240A, a petitioner is eligible for discretionary cancellation of removal if he has resided continuously in the United States for at least seven years after having been admitted for permanent residence for at least five years and has not been convicted

of an aggravated felony.  INA § 240A(a), 8 U.S.C. § 1229b(a).  Pursuant to INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), any period of continuous residence or physical presence in INA § 240A(a), 8 U.S.C. § 1229b(a), ends when the alien has committed one of several offenses specified in INA § 212(a)(2), 8 U.S.C. § 1182(a)(2). Section 212(a) provides that any alien who commits a violation of any state law or regulation relating to a controlled substance, as defined in 21 U.S.C. § 802, is inadmissible.  INA § 212(a)(2)(A)(i)(II); 8 U.S.C. § 1182(a)(2)(A)(i).

Federal law defines marijuana as:

[A]ll parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. [Marijuana] *does not include* . . . the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (emphasis added).  Florida law defines marijuana as "*all parts* of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative,

mixture, or preparation of the plant or its seeds or resin." Fla. Stat. § 893.02(3) (emphasis added).

We apply the categorical approach to determine whether a state conviction constitutes an offense relating to a controlled substance. *Chamu v. U.S. Att'y Gen.*, 23 F. 4th 1325, 1329 (11th Cir. 2022). That means we do not consider the facts specific to Said's conviction. *Id.* Instead, we look to the statute defining the crime of conviction to decide whether convictions under the state statute necessarily entail the conduct that triggers federal immigration consequences. *Id.* If a conviction under the Florida marijuana possession statute always relates to a federally controlled substance— that is, if the substances proscribed by the Florida law are all federally controlled substances—then the state conviction triggers immigration consequences. *Id.*; *see also Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1185 (11th Cir. 2018) (holding that § 893.13(6)(a) is divisible by the identity of the substance involved).

The Supreme Court has made clear that litigants who contend that state statutes are broader than their federal analogues cannot simply apply "legal imagination to a state statute's language" and hope to prevail. *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007). A relevant difference exists only when there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that that falls outside the generic definition of a crime." *Id.* The simplest way for an offender to show that realistic probability is to "point to a case" in which the state statute was used to prosecute such

21-12917                Opinion of the Court                5

conduct. *Chamu*, 23 F. 4th at 1330. However, in *Ramos v. U.S. Att'y Gen.*, we rejected the government's argument that the offender must always "point to a case," reasoning that "*Duenas–Alvarez* does not require this showing when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." 709 F.3d 1066, 1071-72 (11th Cir. 2013) (quotation marks omitted).

After *Ramos*, in *Moncrieffe v. Holder*, the Supreme Court held that, according to "the everyday understanding of 'trafficking,'" violation of a Georgia statute punishing the possession of marijuana with intent to distribute did not constitute "illicit trafficking in a controlled substance" and, thus, an "aggravated felony." 569 U.S. 184, 194-95, 206, 133 S. Ct. 1678, 1693 (2013). Before concluding, the Court addressed the government's concern that convictions under state firearms laws lacking antique-firearm exceptions would fail the categorical inquiry. *Id.* at 205. It noted that "a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms," citing *Duenas-Alvarez*. *Id.* at 206. We later categorized this part of *Moncrieffe* as dicta and expressed "doubts that requiring exemplar prosecutions in cases involving obviously overbroad language makes sense" without deciding whether such dicta was controlling. *Aspilaire v. U.S. Att'y Gen.*, 992 F.3d 1248, 1255 (11th Cir. 2021).

In *United States v. Vail-Bailon*, we held that, by its plain terms and according to Florida caselaw interpreting such terms,

Florida's felony battery statute categorically matched the Guidelines' definition of a "crime of violence." 868 F.3d 1293, 1303 (11th Cir. 2017) (*en banc*). We further concluded that the defendant's farfetched hypothetical examples[1] of overbreadth did not change our holding. *Id.* at 1305-06; *see also Pierre v. U.S. Att'y Gen.*, 879 F.3d 1241, 1252 (11th Cir. 2018) (holding that, because the Florida offense of knowingly causing a child to come into contact with certain bodily fluids, "[b]y its plain terms," constituted a crime involving moral turpitude, the petitioner's failure to provide any exemplar cases precluded overbreadth, despite the petitioner's hypothetical of expelling urine on a child's jellyfish sting).

In *Matter of Navarro Guadarrama*, the BIA held that the alien's convictions for possession of marijuana in violation of § 893.13(6)(a) constituted violations of state law relating to a controlled substance, as defined in § 802. 27 I. & N. Dec. 560, 568 (BIA 2019). It reasoned that "the fact that some incongruity exists between the Federal and Florida laws is not dispositive." *Id.* at 562. Then, citing *Duenas-Alvarez* and *Matter of Ferreira*, 26 I. & N. Dec. 415 (BIA 2014), the BIA stated that, even if a state statute is facially overbroad, the alien must show that in either his own case or other cases that the state court "actually applied the statute to an offense that is not federally controlled." *Id.* at 562-63. It also relied on the

---

[1] For instance, Vail-Bailon argued that an individual who, by tickling a friend who happens to be standing near an open window, startles said friend into falling out of the window, could be prosecuted for felony battery under Florida law. *Vail-Bailon*, 868 F.3d at 1305.

notion that *Moncrieffe* and *Vail-Bailon* rejected *Ramos*' understanding of the realistic probability doctrine. *Id.* at 563-64. In a footnote, the BIA noted that the stated purpose of Florida's expansion of the definition of marijuana was "to facilitate law enforcement's determination of the precise weight of a controlled substance by eliminating the time-consuming need for drug labs to separate the prohibited part of the cannabis plant from the stalks and stems, which are of no drug value to the user." *Id.* at 562 n.3.

More recently, in *Chamu*, however, we reiterated that an offender need not produce a sample prosecution "'when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition.'" *Chamu*, 23 F. 4th at 1330 (quoting *Ramos*, 709 F.3d at 1072). Thus, a litigant can use facially overbroad statutory text to meet the burden of showing the realistic probability that the state law covers more conduct than the federal. *Id.* Nonetheless, when state and federal statutes do not diverge to any significant degree—that is, when a state statute with different terminology is nonetheless no broader than the federal standard—no realistic probability of broader prosecution exists. *Id.* Different words alone are not enough. *Id.* Consequently, in *Chamu*, we held that, although Florida's definition of cocaine covered a type of stereoisomer that some chemical compounds have and that the federal definition did not cover, this difference between the two definitions of cocaine did not create a realistic probability of broader prosecution because the

petitioner did not offer any proof that cocaine had the type of ste-reoisomer not covered by federal law. *Id.* at 1331; *see also Aspilaire*, 992 F.3d at 1258 (holding that guns that could be created but have not been and that were not covered by the antique-fire-arm exception to Florida's felon-in-possession statute did not create a realistic probability of broader prosecution). Further, because the petitioner also did not "point to a case," we concluded that he failed to establish overbreadth. *Chamu*, 23 F. 4th at 1330, 1332.

In contrast, in *United States v. Eason*, we held that a viola-tion of the Hobbs Act robbery statute's proscription against threats of force to "person or property" could not support a career offender enhancement because it criminalized conduct beyond U.S.S.G. § 4B1.2(a)'s threats of force to "the person of another." 953 F.3d 1184, 1189-90 (11th Cir. 2020). We declined to "ignore the statu-tory text and construct a narrower statute than the plain language supports" and concluded that the defendant did not need to "point to a case," given the plain text of the Hobbs Act robbery statute. *Id.* at 1192 (quotation marks omitted); *see also Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (*en banc*) ("[T]he role of the judi-cial branch is to apply statutory language, not to rewrite it."); *Rob-bins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 586 (11th Cir. 2015) (quotation marks omitted) ("When the statute is clear and unambiguous, [Florida] courts will not look behind [its] plain lan-guage for legislative intent.").

Based on the foregoing, we conclude that the BIA and IJ erred in finding that Said was ineligible for cancellation of removal.

By the plain language of § 893.02(3), not all substances that it proscribes are federally controlled. Section 893.02(3) includes "all parts" of the marijuana plant, while federal law does not. For instance, federal law does not include the mature stalks of the marijuana plant or fiber produced from such stalks. 21 U.S.C. § 802(16). This is a significant divergence, and on its own, is sufficient to establish a realistic probability of broader prosecution under Florida law.[2] Notably, unlike in *Chamu*, in which the petitioner presented a hypothetical form of cocaine covered by state, but not federal, law to attempt to establish overbreadth, 23 F. 4th at 1331, the stalks of the marijuana plant do exist. Consequently, Florida law does not simply use different terminology to describe the same substance proscribed by federal law. And although the BIA and IJ both concluded that the Florida and federal definitions of marijuana did not diverge to any significant degree and thus did not create a realistic probability of broader prosecution, our court generally does not "ignore the statutory text and construct a narrower statute than the plain language supports." *Eason*, 953 F.3d at 1192; *Harris*, 216 F.3d at 976.

---

[2] The Eighth Circuit recently reached the same conclusion in *Gonzalez v. Wilkinson*, after concluding that "the plain language of the Florida statute makes clear that it applies to conduct not covered by the federal statute." 990 F.3d 654, 661 (8th Cir. 2021). When a state "statute's reach is clear on its face," the court explained, "it takes no 'legal imagination' or 'improbable hypotheticals' to understand how it may be applied and to determine whether it covers conduct an analogous federal statute does not." *Id.* at 660.

Because a violation of Fla. Stat. § 893.13(6)(a) did not relate to a controlled substance as defined under federal law, Said's conviction under this statute in 2017 did not affect his ability to accrue the required seven years of continuous eligibility necessary for cancellation of removal. Instead, Said's residence "clock" stopped in 2019 when he was arrested for fleeing and eluding while lights and sirens were activated. At this point in time, Said had lived in the United States continuously for eight years, thereby meeting the residency requirement under INA § 240A. Accordingly, we grant Said's petition and remand to the BIA.

**PETITION GRANTED AND REMANDED.**