**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-11756

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

TROY M. HILL,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00051-AW-MAF-1

————————————————

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Troy M. Hill was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The District Court applied a sentence enhancement under the Armed Career Criminal Act (ACCA) and sentenced Hill to 300 months' imprisonment followed by five years of supervised release with various conditions attached. Hill appeals the application of the enhancement and some of the conditions placed on his supervised release. We affirm in part and reverse and remand in part.

**I.**

A grand jury indicted Hill on one count of possession with intent to distribute alpha-Pyrrolidinoisohexanophenone, better known as "molly," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c); one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(a)(1)(A)(i); and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). However, the grand jury later issued a superseding indictment for one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[1] The superseding indictment also listed Hill's prior Florida convictions[2] and asserted, in a section

---

[1] Section 924(e) is the Armed Career Criminal Act.

[2] It listed seven Florida convictions: (1) a 1996 conviction for resisting an officer with violence, carrying a concealed firearm, and armed trespass; (2) a 2000 conviction for possession of crack cocaine and tampering with physical evidence; (3) a 2002 conviction for felony battery and false imprisonment; (4)

entitled "Enhanceable Prior Convictions," that before Hill committed the instant offense, he "had at least three previous convictions for a violent felony, a serious drug offense, or both, committed on occasions different from one another."

Hill proceeded to trial pro se with the aid of standby counsel. On the first day, the Government presented Hill with the option to stipulate that his ACCA predicate offenses occurred on occasions different from one another. The Court explained to Hill that his sentencing range would be different if he had three qualifying offenses, that it looked like his predicate offenses were committed years apart based on what was in the indictment, and that he could stipulate to having committed the offenses on different occasions. The conversation continued, an excerpt of which follows:

> The Court: Let me ask you this, sir: Do you want to take the position that a jury ought to determine whether those were on separate occasions or do you not take that position? If you don't take that position –
>
> Hill: You're saying that if I don't – if I don't take that position, does the law – is there a law that allows – like, within this circuit that allows, not policy, but law that allows [the Government] to present evidence for it to be decided by the jury? That's –

---

another 2002 conviction for possession of cocaine; (5) a March 2006 conviction for sale or possession of cocaine with intent to sell within 1000 feet of a church; (6) a May 2006 conviction for sale of cocaine and possession of cocaine with intent to sell or deliver; and (7) a 2016 conviction for possession of a controlled substance with intent to sell or deliver and sale of a controlled substance.

The Court: Whether this separate occasions inquiry is a jury determination is not settled in this circuit. I can tell you this: If it's your – if you are asserting that a jury ought to decide it, then we will have a jury decide it.

Hill: I am not asserting that a jury –

The Court: Okay. Then it sounds like we don't have an issue. If you are waiving a right to a jury determination of whether your prior offenses were committed on separate occasions, then we are done with this and it will be addressed at sentencing by the judge if you are convicted. You can talk to [your standby counsel] about this, but we need to –

(Pause in proceedings)

Hill: Your Honor?

The Court: Yes, sir.

Hill: I guess I stipulate to it. I don't want to sign anything, but I stipulate – I don't – yeah . . .

The Court: You don't have to sign it on the [issue]. If you are saying that you don't want the jury to decide whether you have three offenses on different occasions, that's fine. You can just say that.

Hill: I don't want the jury to decide that.

The Court: Okay. Then that's something I will decide at sentencing if you are convicted, whether they were

on separate occasions, or whether they qualify in the first place, which would be a legal determination that the jury wouldn't have anyway. Okay?

Hill: All right.

That same day, Hill informed the Court that he wanted his standby counsel to represent him in the trial. Hill was ultimately found guilty of the indicted offense.

The probation office subsequently filed a draft presentence investigation report (PSI). The PSI stated that Hill had at least three prior convictions for violent felonies or serious drug offenses, including: (1) a 1996 conviction for resisting an officer with violence, in violation of Fla. Stat. § 843.01, which Hill was charged with in 1995; (2) a March 2006 conviction for selling or possessing cocaine with intent to sell within 1000 feet of a church, in violation of Fla. Stat. § 893.13(1)(E)1, which Hill was charged with on August 10, 2005; (3) a May 2006 conviction for selling or possessing cocaine with the intent to sell or deliver, in violation of Fla. Stat. § 893.13(1)(A)1, which Hill was charged with on August 31, 2005; and (4) a March 2016 conviction for possessing cocaine with the intent to sell, manufacture, or deliver and selling a controlled substance, in violation of Fla. Stat. § 893.13(1)(A)1, which Hill was charged with in 2012.

Based on these prior offenses and convictions, the draft PSI stated that Hill was an armed career criminal and subject to an enhanced sentence under the ACCA. It calculated a base offense level of 24 for the instant offense of being a felon in possession of a

firearm and ammunition. It added a four-level enhancement for possessing the firearm and ammunition in connection with another felony offense,[3] a two-level enhancement for creating a substantial risk of death or serious bodily injury to another,[4] and another four-level enhancement for being an armed career criminal. Hill's total offense level was 34 and his criminal history category was VI, giving Hill a Guidelines range of 262 to 327 months' imprisonment followed by two to five years of supervised release. The draft PSI also included a section entitled "Recommended Conditions of Supervision," which stated: "As outlined in the Overview of Probation and Supervised Release Conditions (available at www.uscourts.gov) . . . , it is recommended that any term of supervision be under the mandatory and standard conditions adopted for use in the Northern District of Florida." It also recommended six specific "special conditions."[5]

Hill made multiple objections to this draft PSI, two of which are relevant here. He first objected to the ACCA enhancement

---

[3] The draft PSI stated that Hill possessed the firearm and ammunition in connection with intent to distribute molly.

[4] The draft PSI stated that Hill recklessly attempted to flee from law enforcement by running a red light and crossing traffic lines into oncoming traffic, nearly causing an accident.

[5] These included: drug and alcohol testing, substance abuse treatment, mental health evaluation and treatment as necessary, providing financial information to the probation officer, cooperation related to child support payments if applicable, and submitting his person and property to searches by the probation officer.

23-11756                Opinion of the Court                7

because his Florida cocaine convictions did not amount to serious drug offenses under the federal ACCA. He argued that, when all of his cocaine offenses occurred, Florida's definition of cocaine included ioflupane I 123,[6] but the current federal definition of controlled substance, for purposes of identifying serious drug offenses, does not include ioflupane. He further stated that under the categorical approach the Court must assume that his cocaine offenses involved the "least culpable substance," which was ioflupane. So his Florida cocaine convictions would not qualify as serious drug offenses under the federal ACCA and, thus, could not be used as ACCA predicate offenses.

Hill acknowledged the Eleventh Circuit's decision in *United States v. Jackson* (*Jackson II*), which stated that precedent required the Court to look to the federal meaning of controlled substance in effect when the defendant was convicted of the predicate state crime. 55 F.4th 846, 855, 857 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195 (2024). But Hill maintained that was wrong and that the previous *United States v. Jackson* (*Jackson I*) correctly stated that there was no precedent binding the Court on the issue and that the definition in place at the time of the felon in possession conviction governs. 36 F.4th 1294, 1305 (11th Cir. 2022), *vacated*, No. 21-13963, 2022 WL 4959314 (11th Cir. Sept. 8, 2022), and *superseded*, 55 F.4th 846 (11th Cir. 2022), *aff'd sub nom.*

---

[6] Ioflupane is a substance "derived from cocaine via ecgonine." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54715 (Sept. 11, 2015).

8                    Opinion of the Court                    23-11756

*Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195 (2024). He "adopt[ed] all arguments raised by the defendant in the *Jackson* case."[7]

Hill further objected to the ACCA enhancement on the grounds that a jury was not charged with and did not determine that his qualifying offenses occurred on three separate occasions. He also maintained that any waiver of his right to have a jury decide the question was involuntary and uninformed.

The probation office responded that it believed the enhancement was properly applied, and it did not change its recommendation in the final PSI. The Government then filed judgments, sentences, and charging documents related to the predicate offenses to show that they occurred on separate occasions.

At sentencing, Hill conceded that the 2006 convictions qualified as ACCA predicate offenses based on *Jackson II*, but he maintained his objection to the 2016 conviction. He argued that ioflupane was not included in the federal controlled substance definition in 2016, so Hill's 2016 conviction did not qualify as an ACCA predicate offense. The Government responded that while the Court does look to the federal definition in place at the time of the conviction, the law that's in effect at the time of the conviction is

---

[7] Hill later filed a motion to stay his sentencing pending the Supreme Court granting cert in *Jackson II*. The District Court denied the motion because waiting could extend the resolution of Hill's case for a very long time. *Jackson II* has since been affirmed *sub nom* by the Supreme Court in *Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195 (2024).

the law that was actually violated, which, here, was the law in 2012. Thus, the federal definition from 2012 controlled. The Court agreed with the Government. The Court also noted that such a finding wouldn't affect the outcome of sentencing anyway; only three predicate offenses are required for the ACCA enhancement and, assuming the other offenses counted, this one was a fourth.

The Court also found that there was no requirement for the jury to decide the different occasions question and, even if there were, Hill waived it knowingly and voluntarily. And finally, in deciding the different occasions question itself, the Court found that the four offenses noted in the PSI did occur on different occasions based on the documents the Government submitted for them. As such, the PSI was correct: Hill's criminal history category was VI,[8] his offense level was 34, and his Guidelines range was 262 to 327 months' imprisonment followed by two to five years of supervised release.

The Court sentenced Hill to 300 months' imprisonment followed by five years of supervised release and pronounced that "[t]he supervised release conditions will be those set out in the presentence investigation report." It incorporated the report's findings into the sentence, and it stated that "[o]n supervised release [Hill] will be required to comply with the standard and mandatory

---

[8] The Court did agree with Hill that he was not on probation when he committed the instant offense, which lowered his criminal history score from 21 to 19. However, that did not change that Hill's criminal history category was VI as a score of 13 is all that category VI requires.

conditions, as well as the specific conditions set out in the presentence investigation report." When asked if he had any objections, Hill's counsel stated, "No, Your Honor. Nothing other than what was previously stated." The Court entered a final judgment with seven items listed under the "Mandatory Conditions" section, thirteen listed under the "Standard Conditions of Supervision" section, and six listed under the "Additional Supervised Release Terms" section. The six in the "Additional" section were the six special conditions listed in the PSI. Hill timely appeals.

## II.

The ACCA requires any person who violates 18 U.S.C. § 922(g) to serve a mandatory minimum prison sentence of fifteen years when he has three prior convictions for violent felonies or "serious drug offenses," or both, that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

Hill challenges his sentence on multiple grounds: (1) it was error for the judge, instead of the jury, to decide that Hill's predicate offenses occurred on different occasions; (2) it was error for the District Court to find that Hill's predicate offenses qualified as serious drug felonies under the ACCA; and (3) it was error for the District Court to not state all the conditions of Hill's supervised release at sentencing. We take each argument in turn.

### A.

Hill first argues that it was error for the judge, instead of the jury, to decide that he had three separate predicate offenses under the ACCA.

The Fifth and Sixth Amendments require that a unanimous jury find beyond a reasonable doubt that the prior convictions were committed on different occasions for the ACCA enhancement to apply. *Erlinger v. United States*, 602 U.S. 821, 834–35, 144 S. Ct. 1840, 1851–52 (2024). The jury must decide the question because it is inherently fact intensive and the answer has the effect of increasing the defendant's minimum and maximum sentence. *Id.* But a judge deciding the question does not amount to a "structural error," so we review using a harmless error standard. *United States v. Rivers*, 134 F.4th 1292, 1305 (11th Cir. 2025). Under harmless error review, the question is whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 1838 (1999).

However, "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (internal quotation marks omitted). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error," *United States v. Cobb*, 842 F.3d 1213, 1222 (11th Cir. 2016), and we cannot review an alleged error that the party affirmatively encouraged the district court to make. *United States v. Pendergrass*, 995 F.3d 858, 881 (11th Cir. 2021). Though, there is an exception to the invited error doctrine "where the error invited by a party relied on settled law that changed while the case was on appeal." *United States v. Duldulao*, 87 F.4th 1239, 1255 (11th Cir. 2023) (internal quotation marks omitted). This is

not a "free-roving change-in-law exception to the rule of invited error"; it requires "an instructional error . . . flowing directly from our longstanding and clear precedent and attributable to both parties." *Id.* at 1257.

Here, Hill knowingly and voluntarily invited the Court to decide the different occasions question. During its conversation with Hill, the Court explained the different occasions requirement and the implications of the ACCA enhancement. It also explained that the law in this area was unsettled, that the question would go to a jury if Hill wanted it to, and that it would go to the sentencing judge if Hill did not. The Court also gave Hill time to speak with his standby counsel on the issue. Hill then stated that he "stipulate[d]" to the different occasions and that he "[didn't] want the jury to decide [it]." Hill was aware of his options and of the effect that his choice would have, and, with that knowledge, he chose to have the Court decide the different occasions question.

Further, though the *Erlinger* Court decided that a jury must make the different occasions determination while this case was on appeal, that "change" in the law does not create an exception to the invited error doctrine. The exception requires a change in *settled* law, and the law here, as the District Court told Hill, was *unsettled*. The invited error doctrine applies. Hill invited the District Court to decide the different occasions question, and he cannot argue that it was error now.[9]

---

[9] Within his different occasions argument, Hill claims that his indictment was insufficient to "inform [him] of any different-occasions allegations." To the

23-11756                Opinion of the Court                13

**B.**

Hill next argues that the District Court improperly applied the ACCA enhancement because the Government did not meet its burden to prove that the predicate offenses were "serious drug offenses" under the ACCA. He maintains that it is the Government's burden to establish that he was subject to the ACCA and that the Government gave no evidence or argument that the federal and Florida definitions of cocaine match. He states further that the federal definition for cocaine includes only two subsets of cocaine's stereoisomers—optical isomers and geometric isomers—while Florida's definition includes all three stereoisomers—optical isomers, geometric isomers, and nongeometric diastereomers.[10]

_____

extent that this does not fall under the invited error doctrine, we find that the indictment did inform Hill of the allegations. It listed his convictions, along with their dates; charged that he possessed a firearm "[i]n violation of Title 18, United States Code, Section[] 924(e)," which is the ACCA; and stated, in the section entitled "Enhanceable Prior Convictions," that Hill "had at least three previous convictions for a violent felony, a serious drug offense, or both, committed on different occasions from one another." Further, Hill even acknowledged to the Court that "[s]eparate occasion is what was added" in the superseding indictment. He was on notice that different occasions were alleged.

[10] "[I]somers are chemical compounds with the same formula but a different arrangement of atoms in the molecule and different properties. In other words, they are chemicals made from the same number and type of elements combined in different ways. Stereoisomers are one set of isomers, those that differ only in the spatial arrangement of their atoms—all the atoms are linked in the same order, but each chemical's 3D shape is slightly different. Stereoisomers can be further divided into three categories: optical isomers, geometric isomers, and nongeometric diastereomers." _Chamu v. U.S. Att'y Gen._, 23 F.4th 1325, 1330 (11th Cir. 2022) (internal citations and quotation marks omitted).

Because Florida's definition is broader than the federal definition, Florida cocaine convictions do not necessarily fall under the requirements for the ACCA enhancement. Therefore, the Government failed to meet its burden to show that the convictions qualified under the ACCA.

We review de novo whether a prior state conviction qualifies as a serious drug offense under the ACCA. *Jackson II*, 55 F.4th at 849–50. However, we review unpreserved challenges for plain error. *United States v. Laines*, 69 F.4th 1221, 1229 (11th Cir. 2023), *cert. denied,* 144 S. Ct. 2611, 219 L. Ed. 2d 1257 (2024). Under plain error review, the defendant must show "(1) an error; (2) that was obvious; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dudley*, 5 F.4th 1249, 1255 (11th Cir. 2021).

An issue is unpreserved if the objecting party did not raise the issue at the district level with enough clarity to make the district court and the opposing party aware of the specific grounds on which the objecting party would later seek appellate relief. *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007). "An issue also is not preserved when its factual predicates are in the record but were presented to the district court under a different legal theory." *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) (internal quotation marks omitted).

Below, Hill argued that his Florida cocaine convictions did not qualify as predicate offenses under the ACCA because of

discrepancies related to the inclusion of ioflupane in the relevant federal and Florida definitions. Here, he argues that the Government failed to meet its burden to show that the ACCA enhancement was warranted because it did not show that the Florida and federal cocaine definitions match, and he states that the definitions, in fact, do not match because they include different isomers. These are different arguments. The first concerns ioflupane and questions which version of a statute the court is to apply at a given time. The second concerns isomers and considers what's required to meet a burden. Hill did not raise the second issue to the district court clearly enough to provide notice that he would seek appellate review on that ground. As such, we review the issue now for plain error.[11]

We apply the categorical approach to determine whether a defendant's state conviction is a serious drug offense under the ACCA. *Jackson II*, 55 F.4th at 850. A state conviction qualifies only if the state statute under which the conviction occurred defines the offense in the same way as, or more narrowly than, the ACCA's

---

[11] Hill did refer to ioflupane in his reply brief on appeal, but, because he did not raise the argument in his initial brief, we will not consider it. *See United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."); *see also United States v. Campbell*, 26 F.4th 860, 871–72 (11th Cir. 2022) (explaining that issues not raised in the initial brief on appeal are deemed abandoned and that this Court does not have to review abandoned issues); *Thomas v. Crosby*, 371 F.3d 782, 793 (11th Cir. 2004) (Tjoflat, J., concurring) (explaining that when a petitioner fails to raise an issue on appeal, "the petitioner does not have the right to demand . . . consideration" of it).

definition of a serious drug offense. *Id.* The Government has the burden of showing that an enhancement under the ACCA is warranted. *United States v. Harris*, 941 F.3d 1048, 1051 (11th Cir. 2019). However, plain error review puts the burden on the defendant to show that there was an error. *Dudley*, 5 F.4th at 1255. As such, when challenging an enhancement on definition grounds under plain error review, the burden is on the defendant to establish that the state definition is overbroad compared to the federal one. *Laines*, 69 F.4th at 1234. To do that, the defendant must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that does not meet the federal standard." *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1330 (11th Cir. 2022). Where the defendant does not show that, he fails the first prong of the plain error test and thus loses under plain error review. *Laines*, 69 F.4th at 1234.

Here, Hill explains that the Florida definition of cocaine includes nongeometric diastereomers and the federal definition does not, but he does not show that there actually are nongeometric diastereomers of cocaine. He, therefore, does not show that there is a realistic probability that Florida would apply its statute to conduct that would not meet the federal definition. Indeed, this Court has "seriously doubt[ed]" that there is "any scientific basis" for the assertion that there exists a "cocaine stereoisomer that falls outside the federal definition," *Chamu*, 23 F.4th at 1332, and there was no evidence in the record to show as much. We will not hold that Florida's law is "broader than its federal counterpart based only on

the possibility that it might be so." *Id.* at 1331. We must have evidence in the record. *See id.* at 1332.

Hill did not show error here. His argument fails under plain error review.

## C.

Finally, Hill argues that the District Court erred by failing to orally pronounce at sentencing the thirteen conditions of supervised release in the "Standard Conditions of Supervision" section of his final judgment.[12] He maintains that such error prevented him from being able to object to the conditions, violating his constitutional rights.

This Court reviews the terms of supervised release for abuse of discretion, but we review for plain error if the defendant had an opportunity to object to the terms below and did not do so. *United States v. Hayden*, 119 F.4th 832, 837–38 (11th Cir. 2024). Further, we decide de novo whether the defendant had such opportunity. *Id.* at 838.

Here, the District Court told Hill at sentencing that the conditions listed in the PSI attached to his supervised release. It asked Hill if he had any objections, and his counsel stated that he had no objections beyond what was already stated. He, therefore, had an opportunity to object to the Court's failure to specifically describe

---

[12] Hill does not appeal the conditions listed in the "Mandatory Conditions" section or the "Additional Supervised Release Terms" section of his final judgment.

each condition and did not do so. As such, we review for plain error, *see id.*, which, as above, requires the defendant to show "(1) an error; (2) that was obvious; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Dudley*, 5 F.4th at 1255.

A defendant's due process rights are violated if the court fails to pronounce his discretionary conditions of supervised release at sentencing. *Hayden,* 119 F.4th at 838. But "reference to a written list of conditions is enough." *Id.* "For instance, the court may orally adopt the conditions of supervised release recommended in the defendant's [PSI] or in a standing administrative order." *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023).

The Court did not do that here. It did twice state that it was imposing the supervised release conditions recommended in the PSI, but the thirteen conditions in the "Standard Conditions of Supervision" section of the final judgment were not included in that. Though the PSI recommended the "standard conditions adopted for use in the Northern District of Florida," the Northern District had not adopted any standard conditions at that time. A PSI recommending non-existent standard conditions is equivalent to it not recommending any conditions at all. Therefore, the PSI recommended only the six "special conditions" that it specifically listed, and the Court's reference to the PSI was a reference to only those

six conditions. There was no reference to the additional thirteen conditions that appeared in the final judgment.[13]

The Court, therefore, erred by not pronouncing at sentencing the thirteen discretionary conditions of supervised release that it imposed in the "Standard Conditions of Supervision" section of the final judgment. This error was obvious as prior caselaw directly provided for it. *See Hayden,* 119 F.4th at 838; *see also United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."). The error affected Hill's substantial rights, for Hill was denied the opportunity to be heard on the thirteen discretionary conditions. *See United States v. Rodriguez*, 75 F.4th 1231, 1248 (11th Cir. 2023). And the error affects the fairness, integrity, and public reputation of judicial

---

[13] The Government maintains that the Court did properly reference the thirteen conditions because the conditions were listed on www.uscourts.gov, which was named in the PSI. But the full sentence in the PSI states: "As outlined in the Overview of Probation and Supervised Release Conditions (available at www.uscourts.gov) . . . , it is recommended that any term of supervision be under the mandatory and standard conditions adopted for use in the Northern District of Florida." The structure of this sentence clearly shows that the PSI recommends the standard conditions adopted by the district. It references the website to show that recommending the district's standard conditions aligns to guidance contained in the Overview of Probation and Supervised Release Conditions. It does not actually recommend the conditions that appear on the website.

proceedings. Indeed, the discretionary conditions were imposed without due process of law. *See Hayden,* 119 F.4th at 838.

Hill satisfies plain error review with respect to the Court's failure to pronounce orally at sentencing the thirteen discretionary conditions of his supervised release that it later imposed in the "Standard Conditions of Supervision" section of its final judgment. We vacate those thirteen conditions and remand for resentencing as to those conditions.

### III.

We affirm the imposition of the ACCA sentencing enhancement. However, we reverse the thirteen discretionary conditions listed in the "Standard Conditions of Supervision" section in Hill's final judgment and remand for resentencing as to those conditions.

**AFFIRMED IN PART. REVERSED AND REMANDED IN PART.**